TIFFANY WADE *on behalf of herself and all others similarly situated*,

    Plaintiff,

v.

JMJ ENTERPRISES, LLC and TRACI JOHNSON MARTIN,

    Defendants.

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Tiffany Wade ("Plaintiff" or "Ms. Wade"), on behalf of herself and all others similarly situated, by and through undersigned counsel, brings this action against JMJ Enterprises, LLC, and Traci Johnson Martin (collectively, "Defendants"), and hereby alleges upon personal knowledge and information and belief as follows:

## NATURE OF THE ACTION

1. Plaintiff alleges on behalf of herself, individually, and all other similarly situated current and former non-exempt hourly employees of the Defendants, who elect to opt-in to this action pursuant to the collective action provision of 29 U.S.C. § 216(b) (the "Collective Action Members") that they are entitled to, (i) unpaid wages including overtime premiums for all hours worked exceeding forty (40) in a workweek; and (i) statutory penalties, including liquidated damages, pursuant to the FLSA, 29 U.S.C. §§ 201 *et seq.*, specifically 29 U.S.C. §§ 207, 216(b).

2. Plaintiff further complains, pursuant to Federal Rule of Civil Procedure 23, on behalf of herself, individually, and all similarly situated employees of Defendants, who work or

1

worked in the state of North Carolina (the "North Carolina Class") that Defendants violated the NCWHA by failing to pay all wages earned as promised and that Plaintiffs are entitled to all unpaid wages, plus interest, liquidated damages, costs and fees and penalties as allowed for Defendants' violations of the NCWHA, N.C. Gen. Stat. §§ 95-25.1 *et seq.*

## THE PARTIES

3. Plaintiff Tiffany Wade is an adult individual who is a resident of Greensboro, North Carolina, and has worked as an hourly, non-exempt Residential Counselor for Defendants since February 22, 2021.

4. Defendant, JMJ Enterprises, LLC (hereinafter "JMJ") is a North Carolina Limited Liability Company with an identified principal office street address of 2020 Textile Drive, Greensboro, North Carolina, 27405-5857.

5. Defendant, Traci Johnson Martin (hereinafter "Martin") is the manager, owner, operator and registered agent of JMJ.

6. At all relevant times, Plaintiff and other similarly situated individuals were Defendants' "employees" as that term is defined by the FLSA and the NCWHA.

7. At all relevant times, Defendants were, and are, "employers" as the term is defined by the FLSA and the NCWHA.

8. Plaintiff is informed and believes, and based upon such information and belief alleges, that the Defendants, and each of them, are now and/or at all times mentioned in this Complaint were in some manner legally responsible for the events, happenings and circumstances alleged in this Complaint.

9. Plaintiff is further informed and believes, and based upon such information and belief alleges, that at all times herein mentioned, all Defendants, and each of them, were and are

2

the agents, servants, employees, joint venturers, alter egos and/or partners of each of the other Defendants, and were, at all such times, acting within the course and scope of said employment and/or agency; furthermore, that each and every Defendant herein, while acting as a high corporate officer, director and/or managing agent, principal and/or employer, expressly directed, consented to, approved, affirmed and ratified each and every action taken by the other co-Defendants, as herein alleged and was responsible in whole or in part for the matters referred to herein.

10. Plaintiff is further informed and believes, and based upon such information and belief alleges, that at all times herein mentioned, Defendants, and each of them, proximately caused Plaintiff, and all others similarly situated and the general public to be subjected to the unlawful practices, wrongs, complaints, injuries and/or damages alleged in this Complaint.

11. Plaintiff is further informed and believes, and based upon such information and belief alleges, that Defendants, and each of them, are now and/or at all times mentioned in this Complaint were members of and/or engaged in a joint venture, partnership and common enterprise, and were acting within the course and scope of, and in pursuit of said joint venture, partnership and common enterprise and, as such were co-employers of Plaintiffs and the putative class herein.

12. Plaintiff is further informed and believes, and based upon such information and belief alleges, that Defendants, and each of them, at all times mentioned in this Complaint, concurred with, contributed to, approved of, aided and abetted, condoned and/or otherwise ratified, the various acts and omissions of each and every one of the other Defendants in proximately causing the injuries and/or damages alleged in this Complaint.

13. Plaintiff is further informed and believes, and based upon such information and belief alleges, that Martin made all decisions on a daily basis regarding pay policies and exerted

financial and operative control of JMJ and is therefore individually liable under the FLSA and the NCWHA.

## JURISDICTION AND VENUE

14. This Court has original federal question jurisdiction under 28 U.S.C. § 1331 for the claims brought under the FLSA, 29 U.S.C. § 201 *et. seq.*

15. Defendants employed Plaintiff and employs/employed others in this judicial district, owns and operates a Special Needs Group Home business in this judicial district, and is registered to transact business in the State of North Carolina.

16. The claims for violations of the NCWHA are based on the statutory law of the State of North Carolina. Supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367 for the pendent state claims because they arise out of the same nucleus of operative facts as the FLSA claim.

17. All of the alleged causes of action can be determined in this judicial proceeding and will provide judicial economy, fairness and convenience for the parties.

## COVERAGE ALLEGATIONS

18. At all times hereinafter mentioned, Defendants have been an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

19. At all times hereinafter mentioned, Defendants have been an enterprise within the meaning of Section 3(r) of the FLSA 29 U.S.C. § 203(r).

20. At all times hereinafter mentioned, Defendants have been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that the enterprise has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or

otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that the enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated).

21. At all times hereinafter mentioned, Plaintiffs have been employees within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

22. At all times hereinafter mentioned, Plaintiff was individual employees who were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206-207.

23. At all times hereinafter mentioned, Defendants have been an employer within the meaning of Section 95-25.2(5) of the NCWHA, N.C. Gen. Stat. §§ 95-25.2(5).

24. At all times hereinafter mentioned, Plaintiffs were employees within the meaning of Section 95-25.2(4) of the NCWHA, N.C. Gen. Stat. §§ 95-25.2(4).

## **STATEMENT OF FACTS**

25. Defendants control, own and/or operate a Special Needs Group Home called Fresh Start that serves adolescents and adults with mental health disorders with an identified principal office street address of 2020 Textile Drive, Greensboro, North Carolina, 27405-5857.

26. On or about February 22, 2021, Plaintiff began working at JMJ Enterprise as a Residential Counselor at Fresh Start.

27. Plaintiff's manager at the time informed her that she would be paid for training and coming in to meet the girls that she would be working with.

28. On or about February 23, 2021, Plaintiff attended a training class at a church in Greensboro with five other employees. They learned First Aid, CPR, and self defense. The class took about 4 hours.

29. When she began working, Defendants informed Plaintiff that payroll was done monthly and that she would receive her first paycheck one month from the day she started working.

30. When Plaintiff asked her supervisor for more details, she was told that if she started working February 22, 2021, she would be paid on March 22, 2021 for the time worked to that date.

31. Plaintiff was not paid until March 25, 2021.

32. Plaintiff was only paid $263.47 for 31.70 hours of work.

33. Plaintiff's paystub did not include a breakdown of the hours she worked but she verbally was told by Defendant Tracy Martin that her paycheck was for her time worked in February only and did not cover the hours she worked in March.

34. Plaintiff specifically asked Defendant Martin if her wages included the time she spent in training and she was told that the company policy was to not pay for training hours.

35. Plaintiff informed Martin that she had been led to believe she would be paid a full month's wage for the time worked from February 22, 2021 to March 22, 2021 but her paycheck did not pay her for those dates as she was advised by her manager.

36. Martin offered to give Plaintiff an advance on her next paycheck and cut her a check for $600.

37. The day after Plaintiff questioned her paycheck, she received a text message from Defendants stating that there would be a mandatory meeting on March 31, 2021 at 4:00 p.m. Plaintiff was told she could attend the meeting via Zoom or to come to the group home.

38. Plaintiff received a reminder about the meeting from a manager the day before the meeting. Plaintiff asked how long the meeting would last and if employees would be paid for the time spent attending the mandatory meeting.

39. The manager stated that the meeting would last an hour and half and that employees would not be paid for the time spent attending the meeting.

40. Plaintiff told Defendants that she had plans that night and I would be unable to attend. Plaintiff offered to talk with the manager during working hours about the meeting or look over any notes Defendants would like to leave for her.

41. Plaintiff was told that the meeting was mandatory and if she did not attend, she would be written up. Plaintiff did not attend the meeting.

42. The day after the meeting, Plaintiff showed up for her scheduled shift and was given a write up for not attending the meeting.

43. Plaintiff expressed concerns that she should not be written up for not attending the meeting because it was her time off from work and Defendants were asking her to essentially work off the clock and threatening action against her if she did not comply.

44. Plaintiff even looked up the labor laws and showed Defendants that it was not legal to refuse to pay for a mandatory meeting.

45. Immediately following this write up, while Plaintiff was still on her cell phone looking through the labor laws, she received a call from Defendant Martin and was informed that she was getting another write up for being on her phone.

46. Defendants also instituted a new rule that if employees failed to prepare their notes for the day that they would not be paid for their time worked. This new rule was repeated over the course of the next few days and Plaintiff was personally reminded of it every day she was at work.

47. Plaintiff was also told that employees needed to go back and do all the notes that they had missed during the time that they had been told to not worry about them.

48. Plaintiff was briefly instructed over a phone call on how to enter notes, but was told by the previous manager that she did not need to worry about the notes because the manager was going to take care of them.

49. Plaintiff did her best to complete the notes, but routinely ran into issues completing the notes since she was never fully trained on the system.

50. Plaintiff continued to work until April 8, 2021 when she called in sick. The manager asked her if she was coming in the following day and Plaintiff responded that she was still sick and that she had a doctor's appointment on April 12, 2021.

51. Defendants offered to send a nurse to Plaintiff's home and check her for Covid, but if she did not have Covid, Defendants wanted Plaintiff to come in the next day and work her weekend shifts.

52. Plaintiff did not accept the nurse coming to her home and terminated her employment.

53. Plaintiff experienced a hostile working environment and constantly worried she would not get paid properly.

54. Plaintiff was not paid minimum wages and/or promised wages for all of the time worked during March or April of 2021.

55. When Plaintiff went to pick her checks up from Defendant, the assistant manager gave Plaintiff negative performance reviews and write-ups and asked Plaintiff to sign them.

## CLASS/COLLECTIVE ACTION CLAIMS

56. Plaintiff brings these claims on behalf of herself, individually, and on behalf of all other persons similarly situated, pursuant to Rule 23 of the Federal Rules of Civil Procedure and 29 U.S.C. § 216(b).

57. Other persons similarly situated in this action include all persons who were employed by Defendants as hourly, non-exempt employees.

58. Plaintiff, and all others similarly situated, were employed by Defendants when they were engaged in the production of goods for interstate commerce, or as part of an enterprise of Defendants that was engaged in interstate commerce had annual gross sales of at least $500,000 at all relevant times.

59. For those claims brought under the Fair Labor Standards Act (FLSA), Plaintiff seeks to bring her claim on behalf of themselves individually, and all Defendants' non-exempt, hourly employees who are/were owed wages due and payable within the three (3) chronological years immediately preceding the date on which this action was filed and continuing thereafter through the date on which final judgment is entered in this action, and who timely file a written consent to be a party to this action pursuant to 29 U.S.C. § 216(b) ("FLSA Collective"). The FLSA Collective seeks unpaid minimum wages, overtime wages, and liquidated damages.

60. For those claims brought under the North Carolina Wage and Hour Act (NCWHA), Plaintiff seeks to represent a class consisting of all non-exempt, hourly employees who were employed by Defendants and who are/were owed wages due and payable within the two (2) chronological years immediately preceding the date on which this action was filed and

9

continuing thereafter through the date on which final judgment is entered in this action, and who did not received their wages when they were due ("NCWHA Class"). The NCWHA Class seeks to collect back wages, unauthorized wage deductions, and liquidated damages under N.C. Gen. Stat. §§ 95-25.6, 95-25.8, 95.25.22, and 95.25.22(a1).

61. The NCWHA violations occurred as a result of wage deductions made by Defendants from the monthly wages due to the Plaintiffs and the NCWHA Plaintiff Class members when the Plaintiff and NCWHA Class members had not signed a written authorization giving Defendants permission to make that deduction, as required by N.C. Gen. Stat. § 95-25.8(a). Said violations also occurred when the Defendants failed to pay all wages owed when due under N.C. Gen. Stat.. § 95-25.6.

62. Plaintiff has a personal interest in issues of law and fact that are common with the NCWHA Class; the claims and defenses of Plaintiff are typical of the claims and defenses of the NCWHA Class; and Plaintiff and her undersigned counsel will adequately represent and protect the interest of each of the NCWHA Class.

63. Questions of law and fact common to the members of the NCWHA Class predominate over any question affecting only an individual member or members, and a class action is superior to other methods for the fair and efficient adjudication of the controversy.

64. The following questions of law and fact are common to the NCWHA Class:

a. Whether the Defendants failed to pay wages when due based upon the Defendants' failure to obtain a written authorization from the named Plaintiffs and each NCWHA Plaintiff class member in the form required by N.C. Gen. Stat. § 95-25.8(a);

b. Whether Defendants unlawfully took deductions from overtime wages in violation of N.C. Gen. Stat. § 95-25.8(b);

10

c. Whether Defendants failed to pay the Plaintiff and the NCWHA Class members all the wages they had agreed to pay when those wages were due;

d. Whether Defendants failed to compensate Plaintiffs and the NCWHA Class members at the agreed-upon rate, when Defendants used an inaccurate system to record the number of hours worked by Plaintiff and members of the NCWHA Class; and

e. Whether Defendants' failure to comply with the NCWHA was willful.

## COUNT I
### Failure To Pay Minimum Wages Under FLSA
### (By FLSA Collective Against Defendants)

65. Plaintiff realleges and incorporates all preceding paragraphs.

66. Plaintiff and the FLSA Collective were non-exempt employees of Defendants covered by the Title 29 U.S.C. § 203(e)(1) of the FLSA, which states that an employee "means any individual employed by an employer," and that an employer "includes any person acting directly or indirectly in the interest of an employer in relation to an employee."

67. Under Title 29 U.S.C. § 206, Plaintiff and the FLSA Collective are entitled to receive at least a minimum wage for all hours worked. Under Title 29 U.S.C. § 203(g), "hours worked" includes all hours employees are suffered or permitted to work.

68. Defendants required the FLSA Collective to attend training sessions to learn First Aid, CPR and self defense. The FLSA Collective was entitled to be compensated for the time associated with attending training sessions. Defendants, however, failed to pay the FLSA Collective at least minimum wage for all of the time spent in mandatory training sessions.

69. Defendants also required the FLSA Collective to attend mandatory meetings. The FLSA Collective was entitled to be compensated for the time associated with attending the

11

mandatory meetings. Defendants, however, failed to pay the FLSA Collective at least minimum wage for all of the time spent in mandatory meetings.

70. As a result Plaintiff and the FLSA Collective suffered damages as they were not paid minimum wages for all hours actually worked.

71. Plaintiff seeks collective-wide compensation for Defendant's unlawful conduct and will take the appropriate steps to notify and join the FLSA Collective under 29 U.S.C. § 216 (b) via written joinder consents.

72. Under Title 29 U.S.C. §§ 206 and 216(b), Plaintiff and the FLSA Collective are entitled to recover the full amount of unpaid minimum wages, liquidated damages, interest thereon, reasonable attorney's fees and the costs of suit.

## COUNT II
### Failure To Pay Wages when Due Under NCWHA
### (By NCWHA Class Against Defendants)

73. Plaintiff realleges and incorporates all preceding paragraphs.

74. The NCWHA claim arises from Defendant's policy and practice of failing to pay her for the time she spent attending mandatory training programs violation of N.C. Gen. Stat. §§ 95-25.6 and 95-25.7. 29.

75. The NCWHA violations occurred when the Defendants failed to compensate the named Plaintiffs and members of the NCWHA Class for each hour worked.

76. Defendants did not pay all wages due when those wages were due to Plaintiff and the NCWHA Class for compensable work time that the Defendants allowed, suffered, and/or required Plaintiff and the NCWHA Class to work for Defendants.

77. Defendant failed to pay, and failed to timely pay, all wages earned by Plaintiff on her regularly scheduled paydays, including the next regular payday following the separation of Plaintiff's employment.

78. Defendants' conduct was willful. Defendants knew or showed reckless disregard as to whether their conduct was prohibited by the NCWHA and its accompanying regulations.

79. Plaintiff and the NCWHA Class are entitled to damages from Defendants, jointly and severally, in the amount of the unlawful deductions, plus liquidated damages in the same amount and costs and attorney's fees.

## COUNT III

### Retaliation in Violation of FLSA

### (By Plaintiff Wade Against Defendants)

80. Plaintiff realleges and incorporates all preceding paragraphs.

81. Defendants have violated and is violating the provisions of 29 U.S.C. § 215(a)(3) taking adverse employment actions against Plaintiff because she opposed working without pay in violation of the FLSA and requested to be paid for the time she spent attending mandatory training programs in order to comply with the FLSA.

82. Defendants acted willfully in terminating Plaintiff's employment in violation of the FLSA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, demands the following relief:

a) An Order pursuant to Section 16(b) of the FLSA finding Defendants liable for unpaid minimum wages due to Plaintiffs and all others similarly situated and for liquidated damages

equal in amount to the unpaid compensation found due to Plaintiffs and all others similarly situated;

b) An Order pursuant to N.C. Gen. Stat. § 95-25.22 finding Defendants liable for unpaid wages due to Plaintiffs and all others similarly situated and for liquidated damages equal in amount to the unpaid compensation found due to Plaintiff and all others similarly situated;

c) An Order pursuant to 29 U.S.C. § 216(d) finding the Defendant liable for lost wages and liquidated damages resulting from Defendant's unlawful termination of Plaintiffs and all others similarly situated in violation of 29 U.S.C. § 215(a)(3).

d) An Order awarding the costs of this action;

e) An Order awarding reasonable attorneys' fees;

f) A Declaration and finding by the Court that Defendants willfully violated provisions of the FLSA by failing to comply with the minimum wage requirements of the FLSA;

g) A Declaration and finding by the Court that Defendants willfully violated provisions of the NCWHA by failing to comply with the wage payment requirements of the NCWHA;

h) A Declaration and finding by the Court that Defendants willfully violated provisions of the FLSA by taking adverse employment action against Plaintiff in retaliation for her protesting Defendants' unlawful compensation policies;

i) An Order awarding prejudgment and post-judgment interest at the highest rates allowed by law; and

j) An Order granting such other and further relief as may be necessary and appropriate.

## JURY TRIAL DEMAND

Plaintiffs demand a trial by jury for all issues of fact.

>*/s/ L. Michelle Gessner*
>L. Michelle Gessner, NCSB#26590
>GESSNERLAW, PLLC
>602 East Morehead Street
>Charlotte, North Carolina 28202
>Tel: (704) 234-7442
>Fax: (980) 206-0286
>Email: michelle@mgessnerlaw.com
>
>*Attorney for Plaintiff and Putative Class Members*