UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION
CIVIL ACTION NO. 1:21-CV-506

TIFFANY WADE, individually, and on behalf of all others similarly situated,

    Plaintiff,

v.

JMJ ENTERPRISES, LLC and TRACI JOHNSON MARTIN,

    Defendants.

**PLAINTIFFS' RESPONSE IN OPPOSITION OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

Plaintiffs hereby oppose the motion for summary judgment filed by Defendants JMJ Enterprises, LLC and Traci Martin (collectively "JMJ") seeking judgment as a matter of law on Plaintiffs' Amended Complaint. However, JMJ's motion should be denied for multiple reasons.

First, the motion is analytically and structurally infirm. JMJ challenges Wade's claims individually and not as a member of the FLSA collective. Although JMJ thereafter challenges the individual claims of each opt-in Plaintiff, there is no cohesive basis for granting summary judgment as to all Plaintiffs. Allowing JMJ to move for summary judgment against particular individuals who are indistinguishable from other members of the class defeats the entire purpose of a collective action. Since this action has been certified as an FLSA collective action, the Court can only address dispositive motions that resolve common issues of law or fact as to the entire class. This Court has not authorized the use of a "test" plaintiff for purposes of summary judgment. On this basis, the Court should decline to even address the motion and dismiss it summarily.

1

Second, the motion improperly seeks summary judgment on select factual issues rather than an entire cause of action. JMJ challenges certain factual aspects of the FLSA claims but does not address other factual aspects alleged in the complaint. As such, even a resolution in JMJ's favor on the discrete factual aspects challenged would not entirely dispose of the FLSA claim.

Third, the motion does not appear to challenge Plaintiffs' state law claims, yet JMJ claims it is entitled to judgment as a matter of law on the entire Amended Complaint.

Fourth, JMJ's motion is wrong on the law and the facts as to both Wade's retaliation and Martin's individual liability.

The motion should be denied in its entirety.

## II. LEGAL DISCUSSION

**A. The Court should decline to consider a motion for summary judgment in an FLSA collective action that is directed at individual collective members.**

The first significant issue presently before the Court is whether JMJ's motion for summary judgment, which appears to be against Wade individually and against each opt-in Plaintiff on an individual basis, is proper. The structure of JMJ's motion is curious, at best. JMJ first targets Wade individually, independent of the remainder of the collective. Thereafter, JMJ appears to separately target each individual opt-in Plaintiffs' claims, contrasting them with Wade and her claims. The entire structure of the motion is improper.

Although courts have found that summary judgment may be proper as to a portion of the class, it is not proper "against individuals selected at random who are not in any material way distinguishable from the other members of the class or subclass." *Pendlebury v. Starbucks Coffee Co.* 2008 U.S. Dist. LEXIS 1170 (S.D.Florida, 2008). *Pendlebury* further provided:

2

> Allowing Defendant to move for summary judgment against particular individuals who are indistinguishable from other members of the class defeats the entire purpose of a collective action. Under Defendant's proposal, Plaintiffs are faced with the potential of responding to hundreds of individual motions. This scenario would waste the time and resources of both Plaintiffs and the Court. This action has been certified as a collective action, and as such, the Court will only address dispositive motions that resolve common issues of law or fact as to the entire class or an identifiable subclass. Defendant can move for summary judgment as to the entire class or a subclass that is defined by a common question of law or fact. Defendant may not, however, move for summary judgment on an individual basis.

*Id*., at *2.

As such, JMJ's motion is improper and cannot be granted as structured.

**B.     JMJ's motion should be denied because it is not dispositive of an entire claim.**

A summary judgment motion must be denied if it would not be dispositive of any entire claim, as this would be an "improper use of Rule 56." *Greene v. Life Care Centers of America, Inc*., 586 F. Supp. 2d 589, 594 (D.S.C. 2008); see also *BCD, LLC v. BMW Mfg. Corp*., 2008 U.S. Dist. LEXIS 7410, 2008 WL 304878, *25 (D.S.C. 2008) ("Plaintiffs motion would be denied because it improperly seeks summary judgment on select factual issues rather than an entire cause of action."); *Franklin-Mason v. Pen*n, 259 F.R.D. 9,11 (D.D.C. 2009) ("[P]artial summary judgment as to a fact or an element is not available under Rule 56[.]"); *Beard v. District of Columbia Housing Authority*, 584 F.Supp.2d 139, 140 n.1 (D.D.C. 2008) (same).

Here, JMJ selects three factual aspects of Wade's FLSA claims - unpaid training, unpaid mandatory meetings and unpaid overtime - and concludes that Wade cannot prove the essential elements of her FLSA claims. This is not a proper use of Rule 56 because it would not dispose of the entire FLSA claims. The Amended Complaint also alleges failure to pay minimum wage and the evidence shows that Plaintiffs were not paid if they clocked out but then had to stay and keep working if the next shift was late. [ECF No. 78-1 at 124:25-125:5; 78-13, p. 4; 78:25, 45:20-25]. The evidence also shows that JMJ also deduct the cost of training from Plaintiffs' wages. [ECF

3

No. 78-1 at 97:4-99:1; 105:18-107:18; 263:16-267:21; 272:13-275:20]. JMJ's motion does not challenge these factual aspects of Plaintiffs' claims and JMJ fails to dispose of them entirely.

Furthermore, JMJ does not, and cannot, challenge the class action allegations in the complaint. Indeed, it would be premature to do so since the class has not been certified. Since JMJ did not seek partial summary judgment and it cannot dispose of the entire complaint, the motion should be denied on the basis as well.

C. **The face of JMJ's motion reveals myriad triable issues of material fact on the claims of all Plaintiffs.**

JMJ argues that Plaintiffs "have no evidence, beyond general speculation, of FLSA violations by JMJ." [ECF No. 16, p. 16] However, JMJ appears to be expecting documentary evidence, which is non-existent in an off the clock and time-shaving case. JMJ overlooks the fact that Plaintiffs' own testimony is evidence and that, under *Mt. Clemens*, Plaintiffs can testify to the best of his recollection regarding the approximate amount of hours worked.

Normally, an employee who brings suit under the FLSA has the burden of proving that he performed work for which he was not properly compensated; however, that burden is relaxed where the employer has failed to fulfill its obligation of keeping accurate records containing the information required under the FLSA. *Anderson v. Mt. Clemens Pottery Co*., 328 U.S. 680, 686– 688 (1946). Without the burden-shifting provision, an employee would essentially be penalized, and the employer rewarded, for the employer's failure to comply with the record-keeping requirements of the FLSA. *Id.* Indeed, an employer who has failed to comply with the requirements that it maintains adequate employment records "pays for that failure at trial by bearing the lion's share of the burden of proof." *Gomez v. Tyson Foods, Inc*., 2013 U.S. Dist. LEXIS 142586, *30 (D. Neb. Oct. 2, 2013) (citing Secretary of Labor v. DeSisto, 929 F.2d 789, 792 (1st Cir. 1991)).

4

While the initial burden even under *Mt. Clemens* remains on the employee, "that burden is a minimal one." *Gomez*, 2013 U.S. Dist. LEXIS 142586, *30. The "proof" required under the burden-shifting provisions of *Mt. Clemens* may be nothing more than the employee's own credible sworn testimony, which does not have to be an exact recitation of times, dates, and hours worked to shift the burden of proof to the employer. *Arias v. United States Service Industries Inc.*, 80 F.3d 509 (D.C. Cir. 1996). The employee may simply testify to the best of his recollection regarding the approximate amount of hours worked, and an employer who has failed to fulfill its duty under the FLSA to maintain records that could have been used to rebut the employee's testimony must bear the burden of any consequent imprecision in calculating damages. *Martin v. Selker Bros., Inc.*, 949 F.2d 1286 (3rd Cir. 1991); *Mt. Clemens*, 328 U.S. at 688 ("The employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with the requirements of [the FLSA].").

Where the employer has failed to maintain accurate records, it is neither uncommon or inappropriate for an employee to satisfactorily and wholly support his or her claims by offering an average range of hours worked each week. *BadenWinterwood v. Life Time Fitness, Inc.*, 729 F. Supp. 2d 965, 991–992 (S.D. Ohio 2010) ("The Court must determine the amount of uncompensated hours each testifying plaintiff worked. That determination is by necessity imprecise, involving estimates and averages, since Defendant failed to keep records of the precise time Plaintiff worked.").

Furthermore, Plaintiffs would potentially have had evidence of time shaving, but JMJ spoliated the evidence. [ECF No. 82-1 at 226:8-227:20] Each of JMJ's locations maintained a written audit log of any changes needed to be made to the timekeeping system but they were

somehow lost or destroyed well after JMJ received a litigation hold notice in this matter. [ECF No. 82-1 at 226:8-227:20] This critical evidence was never produced and will be the subject of a motion for an adverse inference jury instruction on the ramifications of spoliation.

Lastly, JMJ's own evidence demonstrates disputed facts, and even undisputed facts in Plaintiffs' favor. For instance, JMJ admits that nearly every Plaintiff testified that they were not compensated for mandatory meetings, but JMJ faults them for not complaining about the issue or not knowing the exact number of unpaid meetings they attended or when those meetings were. [ECF No. 78 at p. 16-19 and ECF Nos. 78-6 through 78-20] Likewise, JMJ admits that nearly every Plaintiff testified to having missing hours on their paychecks and that most of them complained about the issue. [ECF No. 78 at p. 16-19 and ECF Nos. 78-6 through 78-20] However, JMJ tries to fault Plaintiffs for not having the specific dates of when JMJ shorted their pay or exactly how much money JMJ withheld from them. JMJ also admits that Plaintiffs complained about being denied overtime but seeks to fault Plaintiffs for not knowing exactly how many overtime hours were shaved. [ECF No. 78 at p. 16-19 and ECF Nos. 78-6 through 78-20] Similarly, JMJ admits that most Plaintiffs were not paid for the training JMJ required before they could start working. [ECF No. 78 at p. 16-19 and ECF Nos. 78-6 through 78-20] If anything, all the details that JMJ claims are missing relate to damages. But the facts on liability are undisputed in Plaintiffs' favor and the evidence is on the face of JMJ's motion.

Of course, Plaintiffs have additional evidence sufficient to defeat summary judgment which has already been forecasted to this Court in Plaintiffs' Rule 23 motion for class certification. [ECF No. 72] For instance:

- Defendants failed to pay Class Members for attending mandatory trainings and preparing onboarding paperwork. [ECF No. 72-1, Deposition of Wade at 23:1-

6

24:17; 43:2-18; 46:21-47:9; ECF No. 72-2, Deposition of Fuller at 30:15-31:25; ECF No. 72-3, Deposition of Cherry at 13:14-15:2; ECF No. 72-4, Deposition of Arnold at 24:5-27:12; 41:16-25; ECF No. 72-5, Deposition of Graham at 28:5-29; ECF No. 72-6, Deposition of Martin at 284:9-286:7] Moreover, Defendants freely admit they have a policy of not paying for any initial training and that they deduct the cost of the training from employees' paychecks. [ECF No. 72-6, Deposition of Martin at 97:4-99:1; 105:18-107:18]

- Defendants failed to pay Class Members for attending mandatory meetings. [ECF No. 72-1, Deposition of Wade at 49:1; ECF No. 72-2, Deposition of Fuller at 28:11-29:3; ECF No. 72-4, Deposition of Arnold at 27:19-33:1; ECF No. 72-5, Deposition of Graham at 39:18-41:8l; ECF No. 72-12, write-ups for not attending mandatory unpaid meetings]

- Defendants failed to pay Class Members for all hours worked. [ECF No. 72-1, Deposition of Wade at 23:1-24:17; ECF No. 72-3, Deposition of Cherry at 10:23-11:20; ECF No. 72-7, Deposition of Johnston at 15:23-17:17; 19:8 - 24:25; 44:9-12]

- Defendants failed to pay Class Members overtime pay for all hours over 40 hours in a workweek. [ECF No. 72-14, wage statements showing overtime hours but no corresponding overtime pay; ECF No. 72-5, Deposition of Graham at 18:20-20:5]

- Defendants regularly shaved time from Class Members' timecards. [ECF No. 72-16, Exemplar of Timecards produced by ChronoTek; ECF No. 72-2, Deposition of Fuller at 21:9-22:20; 34:3-13; 46:8-18; 48:4-49:18; 62:6-24; ECF No. 72-3,

7

> Deposition of Cherry at 16:16-23; ECF No. 72-4, Deposition of Arnold at 15:21-16:24; ECF No. 72-5, Deposition of Graham at 15:16-17:10]

- Defendants made unlawful and unauthorized deductions on Class Members' paychecks to cover the cost of training. [ECF No. 72-14, wage statements showing unlawful deductions; ECF No. 72-6, Deposition of Martin at 263:16-267:21; 272:13-275:20]

**D.** **JMJ is not entitled to summary judgment on Wade's retaliation cause of action.**

JMJ argues that Wade cannot prove her retaliation claim because she supposedly did not suffer an adverse employment action. JMJ does not dispute that Wade formally complained to Martin that refusing to pay her for attendance at a mandatory meeting violated the FLSA. JMJ also does not dispute that she was written up for refusing to attend an unpaid mandatory meeting.

In defense of the retaliation action, JMJ argues only that the write-up was not an adverse employment action, citing several Eighth Circuit opinions. It cites C*ossette v. Minnesota Power & Light*, 188 F.3d 964, 972 (8th Cir.1999) for the proposition that "an evaluation merely causing a loss of prestige or status is not actionable." It cites *Spears v. Missouri Dep't of Corr. & Human Res.,* 210 F.3d 850, 854 (8th Cir.2000), for the proposition that a "downgrade of a performance evaluation could effect a term, condition, or benefit of employment" if it has a tangible effect on the terms or conditions of employment."

Contrary to JMJ's suggestion, action less severe than discharge or demotion can qualify as an adverse employment action. For example, a downgrade of a performance evaluation can be actionable when it alters the terms or conditions of employment. See, e.g., *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 377 (4th Cir. 2004) (citation omitted). However, "absent demotion, firing, or the failure to hire and promote, other adverse employment actions must

8

generally impact an employee's pay, potential for continued employment, or likelihood of promotion within the organization." *Boone v. Goldin*, 178 F.3d 253, 256-57 (4th Cir. 1999).

Here, Wade was labeled "insubordinate" when she refused to attend an unpaid mandatory meeting. [ECF No. 82-1 at 115:23-116:14] Thereafter, her paycheck was short and appeared to not include overtime she had worked. Wade complained to her supervisor and to Martin that her paycheck was short, but she was told it was not. The overtime is input manually at JMJ and someone just "forgot" to add Wade's overtime on to her paycheck. [ECF No. 82-1 at 257:11-22] Even when Martin learned for certain that Wade was denied her overtime pay, she continued to withhold it and has not paid it to Wade to this day. A reasonable jury could conclude that Wade suffered an adverse employment action after complaining to Martin and others at JMJ about FLSA violations.

### E. Traci Martin is individually liable as an employer.

Martin argues that she is not individually liable under the FLSA and NCWHA based on alter ego principles. Although Martin may be an alter ego of JMJ, the salient point is that she is a joint employer of Plaintiffs.

North Carolina law defines "employer" for purposes of the NCWHA as: "any person acting directly or indirectly in the interest of an employer in relation to any employee." N.C. Gen. Stat. § 95-25.2. "[W]hile employees or managers can be individually liable under the [NCWHA] for a failure to pay wages, their individual liability is contingent upon them acting as an 'employer.'" *Kinsinger v. Good*, 2019 U.S. Dist. LEXIS 33910, 2019 WL 1028017, at *2 (W.D.N.C. Mar. 4, 2019) (citing *Powell v. P2Enterprises, LLC*, 247 N.C. App. 731, 786 S.E.2d 798, 801 (N.C. Ct. App. 2016). The question of whether an individual is an "employer" turns on "the totality of the circumstances to determine whether the individual has sufficient operational

9

control over the workers in question and the allegedly violative actions to be held liable for unpaid wages or other damages." *Powell*, 786 S.E.2d at 801.

To decide whether an individual is an "employer" for purposes of NCWHA and FLSA liability, courts apply an "economic reality" test. *Garcia*, 644 F. Supp. 2d at 720. This test examines "the totality of the circumstances to determine whether the individual has sufficient operational control over the workers in question and the allegedly violative actions to be held liable for unpaid wages or other damages." *Id*. (citation and quotations omitted). Factors commonly relied on by courts in determining the extent of an individual's operational control over employees include whether the individual: (1) had the power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records. *Id.* at 721 (citations omitted); see also *Thompson v. Blesssed Home, Inc*., 22 F. Supp. 3d 542, 550 (E.D.N.C. 2014) "These factors are not exclusive nor is any one factor dispositive. Rather, the determination of whether a particular individual had sufficient operational control within a business enterprise to be considered an 'employer' for purposes of the FLSA requires a consideration of all of the circumstances and relevant evidence." *Garcia v. Frog Island Seafood, Inc.* 644 F. Supp.2d 696, 720 (internal brackets and citations omitted).

Martin made no attempt to analyze the applicable law. Moreover, the facts admitted by Martin, and her own evidence submitted in this case, prove that she is individually liable as Plaintiffs' employer. [ECF No. 14-1, paragraph 5] Accordingly, this Court should deny her motion for summary judgment on her individual liability.

**F.      JMJ is not entitled to summary judgment on its breach of contract claim.**

JMJ'S breach of contract claim is not as straightforward as JMJ contends. The only reason Wade needed the advance of $600 was because her pay was delayed longer than she expected or that anyone had explained to her. Thereafter, Wade did not receive her full pay and is still missing a significant portion of her wages for hours worked. [ECF No. 78-2 at 46:21-47:9; 117:2-18]

A reasonable jury could rationally conclude that JMJ already reimbursed itself for the advance and that it is now seeking to double dip.

## III.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request this Court deny Defendants' motion for summary judgment.

Respectfully submitted this 14th day of March 2023.

> */s/ L. Michelle Gessner*
> L. Michelle Gessner, NCSB # 26590
> GESSNERLAW, PLLC
> 602 East Morehead Street
> Charlotte, North Carolina 28202
> Tel: (704) 234-7442; Fax: (980) 206-0286
> Email: michelle@mgessnerlaw.com
>
> *Attorney for Plaintiff and Putative Class Members*

# CERTIFICATE OF WORD COUNT

In compliance with LR7.3(d), I hereby certify that this brief was prepared using Word which reports it does not exceed the maximum of 6,250 words for a response in opposition or movant's brief (including case caption, headings, footnotes, citations, signature lines, certificate of word count and certificate of service).

I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 14, 2023

>*/s/ L. Michelle Gessner*
>L. Michelle Gessner, NCSB # 26590
>GESSNERLAW, PLLC
>602 East Morehead Street
>Charlotte, North Carolina 28202
>Tel: (704) 234-7442; Fax: (980) 206-0286
>Email: michelle@mgessnerlaw.com
>*Attorney for Plaintiff and Putative Class Members*

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this day a true and correct copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

This the 14th day of March, 2023.

>*/s/ L. Michelle Gessner*
>L. Michelle Gessner, NCSB # 26590
>GESSNERLAW, PLLC
>602 East Morehead Street
>Charlotte, North Carolina 28202
>Tel: (704) 234-7442; Fax: (980) 206-0286
>Email: michelle@mgessnerlaw.com
>*Attorney for Plaintiff and Putative Class Members*