UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION
CIVIL ACTION NO. 1:21-CV-506

| | |
|---|---|
| TIFFANY WADE, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>JMJ ENTERPRISES, LLC and TRACI JOHNSON MARTIN,<br><br>Defendants. | **PLAINTIFFS' REPLY TO DEFENDANTS' RESPONSE IN OPPOSITION OF PLAINTIFFS' MOTION TO CERTIFY NCWHA CLASS ACTION UNDER RULE 23** |

### I. INTRODUCTION

In response to Plaintiffs' Motion to Certify a NCWHA Class Action under Rule 23, Defendants JMJ Enterprises, LLC and Traci Martin (collectively "JMJ") recycle the same set of facts for the third time. JMJ used the same factual recitation to try to show it is entitled to decertification and summary judgment [ECF Nos. 77-78 and 81-82] Once again, though, the facts and evidence on the face of the motion will prove to be self-defeating.

Of the four elements needed for Rule 23(a) class certification, JMJ challenges three - commonality, typicality and adequacy of class representative. Regarding commonality and typicality, JMJ argues that, "all Plaintiffs do not share similar work experiences and requirements related to attending training, mandatory meetings and overtime hours" and that there are "few, if any, questions of law or fact common to the class." [ECF No. 80 at p. 8] Of course, these conclusory statements are not borne out by the factual recitation in the motion or the evidence JMJ submitted supporting those facts, let alone Plaintiffs' own evidence submitted in the moving papers.

Regarding adequacy of Wade as the class representative, JMJ cites no supporting case law but argues that Wade is inadequate because she does not recall the names of coworkers she talked to about her claims and because "distance, time restraints and lack of interest" supposedly prevent her from fairly and adequately representing the class. This is an erroneous conclusion drawn from a few deposition questions. It is clear from all the other evidence that Wade has actively participated in this case and she is not a mere figurehead being controlled by Plaintiffs' counsel.

Regarding the adequacy of class counsel, JMJ again cites no supporting case law but argues that Wade's counsel is inadequate based on objections made during the depositions of Wade and other Plaintiffs. This is not the law. Nor could it be. The only time misconduct renders counsel inadequate is when the misconduct jeopardizes the court's ability to reach a just and proper outcome in the case.

Lastly, JMJ does not challenge the numerosity element, since there are 95 class members. JMJ also does not appear to challenge the additional requirements of Rule 23(b)(3) - predominance and manageability.

Since JMJ has barely attempted to overcome Plaintiffs' robust Rule 23 motion, that motion should be granted.

## II. LEGAL DISCUSSION

### A. JMJ has failed to show that Plaintiffs have not met the commonality and typicality elements.

The commonality and typicality requirements may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members. See *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 344 (4th Cir. 1998) ("we… do not suggest that the commonality and typicality elements of Rule 23 require that members of the

class have identical factual and legal claims in all respects."). As such, factual differences among individual claims will not defeat commonality provided the claims arise from a common nucleus of operative facts. *Haywood v. Barnes,* 109 F.R.D. 568, 577 (E.D.N.C., Feb. 13, 1986) (holding a common question is one which arises from a common nucleus of operative facts, regardless of whether underlying facts fluctuate and vary as to individual claimants). Stated another way, there must be some "glue" that holds the claims together. *Wal-Mart Stores Inc v. Dukes*, 564 U.S. 338 (2011). In determining whether this element is met in NCWHA wage claims, courts in this district tend to focus on whether the employer had company-wide wage policies that injured the proposed class. See *McLaurin v. Prestage Foods, Inc.*, 271 F.R.D. 465, 475 (E.D.N.C., Nov. 10, 2010).

As the Fourth Circuit has explained, "[t]he typicality requirement goes to the heart of . . . representative parties' ability to represent a class." *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006). While typicality does not require that "the plaintiff's claim and the claims of class members be perfectly identical or perfectly aligned," the plaintiff's claim "cannot be so different from the claims of absent class members that their claims will not be advanced by plaintiff's proof of his own individual claim." *Id*. at 467. In other words, "when the variation in claims strikes at the heart of the respective causes of actions," class certification should be denied. *Id.*

Here, there is no question that both the commonality and typicality elements are met. In fact, JMJ's own evidence provides the proof. Indeed, the corporate evidence in this case is enough to establish both commonality and typicality:

- Martin is the sole owner of JMJ. [ECF No. 82-1 at 20:5-9]

3

- Martin is responsible for developing and implementing the policies and procedures for JMJ. Martin is also responsible for establishing policies concerning employee hourly rates of pay and determining the number of hours all employees are allowed to work. [ECF No. 14-1, paragraph 5];
- JMJ uses the same payroll system and the same time clock system for all employees. [ECF No. 82-1 at 63:21-65:23];
- All three locations use a time correction log to register edits to their time. [ECF No. 82-1 at 198-15-200-20; 202:19-25];
- All employees are subject to the same training requirements and JMJ does not pay any employees for the initial training needed to become an employee. [ECF No. 82-1 at 97:15-98:3; 103:5-16];
- JMJ's managers were not aware they had to pay employees for mandatory meetings. [ECF No. 82-1 at 112:8-15];
- Employees worked overtime for which they were not compensated, even after Martin had actual knowledge. [ECF No. 82-1 at 117:21-118:23];
- JMJ's payroll system does not automatically calculate overtime; it must be manually input. [ECF No. 82-1 at 257:11-22];
- If Martin believes an employee owes JMJ money, she takes it up herself to withhold wages due. [ECF No. 82-1 at 118:1-5];
- JMJ does not pay for work performed for the benefit of JMJ if it is not authorized and/or if they are not clocked in. [ECF No. 82-1 at 122:24 - 123:5; 124:21-125:12; 211:8-18];

4

- JMJ did not preserve the written audit logs showing edits to employees' time. [ECF No. 82-1 at 226:8-227:20];
- JMJ made deductions from employees' pay based on purported verbal agreements. [ECF No. 82-1 at 263:16-265:23];

Despite this wealth of evidence, JMJ makes an anemic attempt to tackle commonality and typicality in a few paragraphs, targeting only a few specific aspects of a few of Plaintiffs' claims. For instance, JMJ claims there is no commonality/typicality as to the failure to pay for mandatory meetings because: 1) the only mandatory meeting which gives rise to the NCWHA violation is the March 31, 2021 meeting; 2) this meeting only affected the Fresh Start location; 3) none of the class members attended the meeting; and 4) all staff were compensated for the meeting. This particular challenge is simply factually incorrect. As the evidence in support of Plaintiffs' motion and even the evidence in support of JMJ's response, make clear, Plaintiffs' claims are based on JMJ's failure to pay for mandatory meetings as a regular practice, not just on March 31, 2021, and not just at the Fresh Start location. [ECF No. 72, p. 6]

In addition, JMJ claims there is no commonality/typicality as to the failure to pay for training because: 1) the need for training was individualized based on the background of the applicant; and 2) the admitted common policy of not paying for training was supposedly lawful. JMJ's argument is self-defeating. It admits there is a common policy of not paying for initial training for those who need it. Whether that compensation is legally required goes to the merits of the claim, not whether the claim is common or typical among Plaintiffs.

Lastly JMJ claims that Wade's claims are not typical because she was countersued by JMJ and she has a retaliation claim. JMJ cites no legal authority holding that a Rule 23 motion can be denied whenever the defendant countersues the named Plaintiffs. That rule obviously

5

would not be workable and would allow defendants to easily and early defeat any class action by simply filing a cross-complaint.

Notably, JMJ overlooks Plaintiffs' other claims, such as the failure to pay overtime, off the clock work, time shaving, unauthorized deductions and unpaid onboarding. [ECF No. 72 at p. 6] JMJ does not even bother trying to argue these claims are lacking in commonality and/or typicality, which is reason enough to grant the motion.

Accordingly, this Court should find the commonality and typicality elements have been met.

**B.      JMJ has failed to show that Wade is an inadequate class representative.**

Without citing any supporting case authority whatsoever, JMJ argues that Wade cannot establish that she will fairly and adequately represent the interests of the class because: 1) she could not recall the names of coworkers she spoke to about not being paid properly; and 2) she has invested little time in this litigation. Neither of these assessments are enough to deny the motion on the basis of adequacy.

It appears JMJ is hinting at a line of cases related to adequacy that are entirely inapplicable to the facts of this case. There are cases holding that the court can consider "the willingness and ability of the representative[s] to take an active role in and control the litigation and to protect the interests of absentees," as well as the potential class representative's "knowledge or understanding concerning what the suit is about." *Monroe v. City of Charlottesville*, 2007 U.S. Dist. LEXIS 67444 (W.D.V.A, Sept. 12, 2007). "Findings that a representative lacks sufficient interest, credibility, or either knowledge or an understanding of the case—although a knowledge or understanding of all the intricacies of the litigation is not required—are grounds for denying class certification." *Todd v. XOOM Energy Md., LLC,* 2020

6

U.S. Dist. LEXIS 149022 (Dist. MD, Aug. 18, 2020). "The analysis is intended 'to ensure that the parties are not simply lending their names to a suit controlled entirely by the class attorney." *Id.* (quoting 7A Charles Alan Wright et al., Federal Practice and Procedure § 1766 (3d ed. 2005)).Courts find this last inquiry is important "to ensure that the parties are not simply lending their names to a suit controlled entirely by the class attorney." *Id.* However, that is not this case.

Wade has carried her burden of proving that she will, and has, vigorously prosecuted the claims against JMJ. She has taken, and will continue to take, an active role in and control the litigation. [ECF No. 86-1] There is no evidence that Wade is merely lending her name to a suit controlled entirely by the class attorney. Notably, in *Todd*, the adequacy issues were not dispositive, even though the district court found the class representative had significant adequacy issues. *Todd, supra*, at *34.

This Court should find Wade is an adequate class representative or that any adequacy issues are not dispositive.

**C.      JMJ has failed to show that counsel is inadequate class counsel.**

Again, without citing any supporting authority whatsoever, JMJ argues that Wade's counsel, who has vigorously pursued Plaintiffs' class claims for years, persevering through all sorts of defense shenanigans, is somehow inadequate based on conduct that occurred during Plaintiffs' depositions. This is not the law.

In fact, the only cases considering proposed class counsel's past conduct when determining adequacy involve actual unethical conduct by class counsel, and even then, the bar is high. See *Creative Montessori Learning Centers v. Ashford Gear LLC*, 662 F.3d 913, 918 (7th Cir. 2011) ["[m]isconduct by class counsel that creates a serious doubt that counsel will represent the class loyally requires denial of class certification." and counsel's "lack of integrity .

7

. . casts serious doubt on their trustworthiness" and that there was "no basis for confidence that they would prosecute the case in the interest of the class . . . rather than just in their interest as lawyers"). Such a "serious doubt" about the adequacy of counsel exists "when the misconduct jeopardizes the court's ability to reach a just and proper outcome in the case." *Reliable Money Order, Inc. v. McKnight Sales Co., Inc.*, 704 F.3d 489, 499 (7th Cir. 2013).

Indeed, the degree of unethical conduct justifying a finding of inadequacy is high, and often turns on counsel's integrity and candor. See *Viveros v. VPP Grp., LLC*, No. 12- 129, 2013 U.S. Dist. LEXIS 97997, 2013 WL 3733388, at *11 (W.D. Wis. July 15, 2013) (denying class certification in part because class counsel was previously publicly reprimanded by the Wisconsin Supreme Court for making misrepresentations to the Office of Lawyer Regulation, had improperly solicited a client, and had made improper comments during closing arguments in another case); *Walter*, 2010 U.S. Dist. LEXIS 7374, 2010 WL 308978, at *10 (finding class counsel inadequate due to multiple prior disbarments for issues associated with the application of client funds, multiple sanctions, a "private reprimand" from the state Supreme Court disciplinary board, and a "history of dilatoriness" in the litigation at hand); *Bodner v. Oreck Direct, LLC*, No. 06-4756, 2007 U.S. Dist. LEXIS 30408, 2007 WL 1223777, at *2-3 (N.D. Cal. Apr. 25, 2007) (denying certification where class counsel had a pattern of ethical violations showing that counsel repeatedly developed lawsuits before finding plaintiffs, a "cart before the horse" approach, "never mind the lack of a fitting plaintiff or the lack of ethical scruples"); *Kaplan v. Pomerantz*, 132 F.R.D. 504, 510-11 (N.D. Ill. 1990) (granting motion for decertification in part because "plaintiff's counsel was at least a silent accomplice in, and at most encouraged," plaintiff's false deposition testimony); *Wagner v. Lehman Brothers Kuhn Loeb In*c., 646 F. Supp.

8

643, 659, 661-62 (N.D. Ill.1986) (denying class certification in part because class counsel offered to pay a witness for his testimony).

As such, there is simply no legal support for JMJ's position that class counsel can be deemed inadequate based on litigation tactics or conduct at depositions, particularly where JMJ has not heretofore raised the issue, moved to compel further responses or sought sanctions. If JMJ's new rule was put in practice, courts would have a mess on their hands with every Rule 23 motion. Defendants would seek to use every imperfect interaction between their counsel and proposed class counsel to try to defeat certification and courts would waste precious judicial resources sorting out the personality conflicts.

Accordingly, there is no basis for finding Wade's counsel to be inadequate class counsel. Indeed, Ms. Gessner has significant experience in serving Plaintiffs as class counsel as detailed at ECF No. 72-13. Since the filing of Plaintiffs' original Motion, Plaintiffs' counsel herein has successfully tried to a jury the *Jahagirdar et. al. v. Computer Haus of NC, Inc. et. al.*, 1:20-cv-33-MOC WDNC (referenced at ECF No. 72-13 at p. 7) which is a hybrid Rule 23 certified class action and FLSA certified collective action wage and hour matter with 216 Plaintiffs with certified classes in five states. The jury rendered a verdict in Plaintiffs' favor on March 1, 2023. [*See,* ECF No. 327 in *Jahagirdar, et. al.*]

### III. CONCLUSION

For the reasons set forth above, Plaintiff Tiffany Wade respectfully requests that her Motion for (1) certification of this action as a class action under Rule 23(a) and (b)(3) for the North Carolina Wage and Hour Act claims; (2) appointing Named Plaintiff Wade as class representative; and (3) appointing L. Michelle Gessner at GessnerLaw, PLLC as class counsel, be granted.

Respectfully submitted this 15th day of March 2023.

> */s/ L. Michelle Gessner*
> L. Michelle Gessner, NCSB # 26590
> GESSNERLAW, PLLC
> 602 East Morehead Street
> Charlotte, North Carolina 28202
> Tel: (704) 234-7442; Fax: (980) 206-0286
> Email: michelle@mgessnerlaw.com
>
> *Attorney for Plaintiff and Putative Class Members*

## CERTIFICATE OF WORD COUNT

In compliance with LR7.3(d), I hereby certify that this brief was prepared using Word which reports it does not exceed the maximum of 6,250 words for a response in opposition or movant's brief (including case caption, headings, footnotes, citations, signature lines, certificate of word count and certificate of service).

I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 15, 2023

> */s/ L. Michelle Gessner*
> L. Michelle Gessner, NCSB # 26590
> GESSNERLAW, PLLC
> 602 East Morehead Street
> Charlotte, North Carolina 28202
> Tel: (704) 234-7442; Fax: (980) 206-0286
> Email: michelle@mgessnerlaw.com
>
> *Attorney for Plaintiff and Putative Class Members*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this day a true and correct copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

This the 15th day of March 2023.

>*/s/ L. Michelle Gessner*
>L. Michelle Gessner, NCSB # 26590
>GESSNERLAW, PLLC
>602 East Morehead Street
>Charlotte, North Carolina 28202
>Tel: (704) 234-7442; Fax: (980) 206-0286
>Email: michelle@mgessnerlaw.com
>
>*Attorney for Plaintiff and Putative Class Members*