# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

TIFFANY WADE, individually,      )
and on behalf of all others similarly situated,    )
                            )
        Plaintiff,        )
                            )      1:21CV506
        v.          )
                            )
JMJ ENTERPRISES, LLC &      )
TRACI JOHNSON MARTIN,      )
                            )
        Defendants.    )

## MEMORANDUM OPINION AND ORDER

LORETTA C. BIGGS, District Judge.

Before the Court are Plaintiff's Motion to Certify a Rule 23 Class, (ECF No. 71), and Defendants' Motion to Decertify Plaintiffs' Conditional Collective Action, (ECF No. 81).[1] For the reasons stated herein, Plaintiff's Motion will be granted in part; and Defendants' Motion will be denied.

## I     BACKGROUND

JMJ Enterprises, LLC ("JMJ") and Traci Johnson Martin, the sole owner of JMJ, (collectively "Defendants") control, own, or operate three group homes in Greensboro, North Carolina. (ECF No. 78-1 at 216:13–217:8; *id.* at 20:5-9.) The group homes serve at-risk children and adolescents with mental illness or emotional disturbance, as well as adults with developmental disabilities and mental illness. (ECF No. 78-1 at 139:24–140:2.) JMJ employed Plaintiff Tiffany Wade ("Plaintiff") at one of its group homes, Fresh Start Home for Children,

---

[1] Defendants have also filed a Motion for Summary Judgment (ECF No. 77) which shall be addressed by separate Order.

on or about February 22, 2021, through April 9, 2021. (ECF Nos. 80-2 at 63:23–64:9; 80-4 at 4).

Following Plaintiff's resignation from JMJ on April 9, 2021, she commenced this action, (ECF No. 1), alleging that Defendants violated the Fair Labor Standards Act ("FLSA") 29 U.S.C. § 201 *et seq.*, and the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. § 95-25.1 *et seq.*, by failing to compensate her for time associated with attending training sessions and mandatory meetings during her employment with JMJ. (ECF No. 1 ¶¶ 1–2.) On January 10, 2022, this Court, upon motion of Plaintiff, conditionally certified Plaintiff's action as a FLSA Collective Action. (ECF No. 21 at 5.)

Plaintiff subsequently filed an Amended Complaint on June 7, 2022, (ECF No. 53), adding allegations that Defendants did not pay employees overtime and adding counts for overtime wages under the NCWHA and the FLSA. (ECF No. 53 at 14–17.) Plaintiff's Amended Complaint contains five counts, three of which are federal claims under the FLSA: (Count I) failure to pay minimum wages for all hours worked; (Count II) failure to pay overtime wages; and (Count V) retaliation. (*Id.* at 13–18.) Plaintiff also brings state claims under the NCWHA: (Count III) failure to pay wages due and (Count IV) failure to pay overtime wages. (*Id.* at 15–17.)

Plaintiff now moves to Certify a Class pursuant to Rule 23(a) and Rule 23(b)(3) of the Federal Rules of Civil Procedure, while Defendants move to Decertify Plaintiff's Conditional Collection Action.

## II.   PLAINTIFF'S COUNT IV IS PREEMPTED BY THE FLSA

As a threshold matter the Court will address an issue that was not raised by either party—North Carolina law provides for FLSA preemption by exempting certain claims made

pursuant to the NCWHA. *Luna-Reyes v. RFI Const., LLC*, 109 F. Supp. 3d 744, 752 (M.D.N.C. 2015).

Here, Plaintiff brings two claims under the NCWHA in the Amended Complaint. First, in Count III, Plaintiff alleges that Defendants failed to pay wages due pursuant to N.C. Gen. Stat. § 95-25.6 and § 95-25.7. (ECF No. 53 at 15–16.) Second, in Count IV, Plaintiff alleges that Defendants failed to pay overtime wages, pursuant to N.C. Gen. Stat. § 95-25.4. (*Id.* at 16–17.) The Court concludes that in this case Count IV of Plaintiff's Amended Complaint is preempted by FLSA and must be dismissed; however, Count III is not preempted.

The NCWHA includes an exemption to several of its provisions for employees covered under the FLSA. *See* N.C. Gen. Stat. § 95-25.14 (stating in pertinent part that "[t]he provisions of G.S. 95-25.3 (Minimum Wage)" and "G.S. 95-25.4 (Overtime)" do not apply to "[a]ny person employed in an enterprise engaged in commerce or in the production of goods for commerce as defined in the Fair Labor Standards Act").

Plaintiff brings Count IV for overtime pay under N.C. Gen. Stat. § 95-25.4, and as noted above, this claim is exempt pursuant to N.C. Gen. Stat. § 95-25.14 for employers covered under the FLSA. Here, the FLSA applies to JMJ, which Plaintiff concedes by bringing the FLSA claims,[2] and North Carolina law provides for FLSA preemption by exempting the NCWHA overtime claim Plaintiff brings in Count IV. *See Luna-Reyes*, 109 F. Supp. 3d at 752 (stating that under N.C. Gen. Stat. § 95-25.14, the FLSA preempts North Carolina's overtime

---

[2] The Parties do not dispute that JMJ is an enterprise subject to the FLSA. The FLSA applies to the employees of an "enterprise engaged in commerce or in the production of goods for commerce," that "has employees 'handling, selling, or otherwise working on goods or materials that have been moved in . . . commerce,'" and which is "engaged in the operation of an institution 'primarily engaged in the care of the sick, the aged, the mentally ill or defective who reside on the premises of such institution.'" *Dole v. Odd Fellows Home Endowment Bd.*, 912 F.2d 689, 693 (4th Cir. 1990) (citing 29 U.S.C. § 203(s)(5) (1990)).

3

(§ 95-25.4) provision).)  Moreover, Plaintiff's claim for overtime wages under the NCWHA is duplicative of the overtime claim brought under the FLSA.  (*See* ECF No. 53 at 14–15; *id.* at 16-17.)  *See Anderson v. Sara Lee Corp.*, 508 F.3d 181, 194 (4th Cir. 2007) ("Our conclusion is consistent with the rulings of several district courts deeming state claims to be preempted by the FLSA where those claims have merely duplicated FLSA claims.")  For these reasons, Count IV for overtime wages under the NCWHA is preempted by the FLSA and therefore will be dismissed as a matter of law.

However, Count III brought under § 95-25.6 and § 95-25.7 of the NCWHA is not preempted by the FLSA.  (ECF No. 53 ¶ 83).  § 95-25.6 is commonly known as the "payday statute" and requires each employer to pay "all wages and tips accruing to the employee on the regular payday."  *See Martinez-Hernandez v. Butterball, LLC*, 578 F. Supp. 2d 816, 818, 821 (E.D.N.C. 2008) (quoting N.C. Gen. Stat. § 95-25.6) (internal quotation marks omitted).  As discussed above, this provision is not exempt under the NCWHA for employees covered by the FLSA.  *See* N.C. Gen. Stat. § 95-25.14.  Similarly, N.C. Gen. Stat. § 95-25.7 provides that "[e]mployees whose employment is discontinued for any reason shall be paid all wages due on or before the next regular payday" and is not exempt under the NCWHA for employees covered by the FLSA.  Therefore, because Plaintiff brings Count III pursuant to provisions that are not exempt under the NCWHA and thus are not preempted by FLSA because they are sufficiently distinct from FLSA provisions.  *See Martinez-Hernandez*, 578 F. Supp. 2d at 820 (citing *Barton v. Pantry, Inc.*, No. 1:04-CV-748, 2006 WL 1367421, at *2 n.5 (M.D.N.C. May 17, 2006) (finding that NCWHA claims were not preempted where the state law claims did not invoke minimum wage nor the overtime provisions of the FLSA) ("[S]ome of the employees may have been due more than minimum wage for the hours worked 'off the clock' or deleted

from the records. These amounts would not be covered by either their minimum wage or overtime compensation claims under the FLSA.")) The record sufficiently supports allegations that Plaintiff and putative class members were not paid for all hours worked, including for training, (ECF No. 80-1 at 98:21–99:1), and mandatory meetings, (ECF Nos. 72-1 at 49:1-6, 12-24; 72-2 at 28:11–29:2; 72-4 at 27:12–32:12; 72-5 at 39:14–41:8), and that Defendants made unauthorized deductions from employees' time logs, (ECF No. 72-15). Although arising from the same facts, Plaintiff's wages due claim is sufficiently separate and distinct from her FLSA claims for minimum wage and overtime wages as the theory of liability does not invoke provisions of the FLSA.

## III. RULE 23 CLASS CERTIFICATION

The Court will next consider whether Plaintiff meets the requirements for certifying a class under Rule 23 for the remaining NCWHA claim, Count III for wages due pursuant to N.C. Gen. Stat. § 95-25.6 and 95-25.7.[3] Plaintiff seeks to establish a class defined as "all non-exempt, hourly paraprofessionals/counselors who were employed by [JMJ] working in North Carolina." (ECF No. 72 at 7.) Plaintiff contends that she has satisfied the Rule 23(a) and Rule 23(b)(3) requirements. (ECF No. 72 at 8–17.) Defendants contend that Plaintiff has not satisfied these requirements. (ECF No. 80 at 7–19)

In order to be certified under Rule 23, a class must first comply with the four prerequisites established in the Rule's subsection (a): "(1) numerosity of parties; (2) commonality of factual and legal issues; (3) typicality of claims and defenses of class representatives; and (4) adequacy of representation." *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d

---

[3] These claims are subject to a two-year statute of limitations. *See* N.C. Gen. Stat. § 95-25.22(f) (citing N.C. Gen. Stat. § 1-53).

417, 423 (4th Cir. 2003) (citing Fed. R. Civ. P. 23(a)). Once that baseline is established, the class action "must fall within one of the three categories enumerated in Rule 23(b)." *Id.* (citing Fed. R. Civ. P. 23(b)). Plaintiff seeks class certification in this case under Rule 23(b)(3), (ECF No. 72 at 2), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members" and that "a class action is superior to other available methods" of adjudication. Fed. R. Civ. P. 23(b)(3).

A party seeking class certification under Rule 23 "must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove" his ability to meet all of the prerequisites the Rule requires. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *see also Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 146 (4th Cir. 2001) ("The party seeking class certification bears the burden of proof." (citation omitted)). Yet while the plaintiff bears the burden to demonstrate compliance, a district court also "has an independent obligation to perform a 'rigorous analysis' to ensure that all of the prerequisites have been satisfied." *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014) (citing *Wal-Mart*, 564 U.S. at 350–51). "Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim." *Wal-Mart*, 564 U.S. at 351. However, "[m]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013).

The Court first evaluates the prerequisites under Rule 23(a).

## A. Numerosity

To be certified under Rule 23 a plaintiff must first demonstrate that its class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "No

specified number is needed" to make this showing, *Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967), and "[a] court has broad discretion" in making a determination based on the particular circumstances of the case. *Roman v. ESB, Inc.*, 550 F.2d 1343, 1348 (4th Cir. 1976). Indeed, some courts have held that classes as small as eighteen may satisfy the numerosity requirement. *See Cypress*, 375 F.2d at 653.

Plaintiff argues that because the putative class has 95 members, it is sufficiently numerous and joinder is an impractical alternative, so numerosity is satisfied. (ECF No. 72 at 9.) Defendants do not appear to contest that Plaintiff has satisfied the numerosity requirement, even though Defendants point out that of the 97 individuals notified for the FLSA action, only 15 opted into the litigation. (ECF No. 80 at 8.) To the extent that Defendants are challenging numerosity, their arguments are neither relevant nor persuasive.

The Court finds that a class of 95 members would make joinder impractical. Furthermore, the Court finds that given the particular circumstances of the putative class members who are "entry-level workers who are not paid much more than minimum wage," (ECF No. 72 at 9), 95 class members are more than sufficient to satisfy the numerosity requirement.

The Court finds that Plaintiff has satisfied the Rule 23(a) numerosity requirement.

## B. Commonality

Plaintiff asserts that she and the putative class members "were all non-exempt employees who worked for Defendants in North Carolina" and lists questions of law and fact that she and the putative class members share in support of her argument that she has satisfied the commonality requirement. (ECF No. 72 at 9–11.) Defendants argue that there are "few, if any" common questions of law and fact between Plaintiff and the putative class. (ECF No.

7

80 at 8). Specifically, Defendants argue that the meeting Plaintiff complains of only "affected the staff of Fresh Start," and "that the type of, and need for training is very much individualized based on the background of the applicant." (*Id.* at 9.) Defendants also seek to attack commonality by making merits-based arguments, (*id.*), which are not proper for the Court to consider because a review of these arguments indicates that they are not relevant to the law with respect to commonality or Rule 23 certification.

Rule 23 certification is only appropriate if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Because "any competently crafted class complaint literally raises common questions," what matters most to commonality is "the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation." *See Wal-Mart*, 564 U.S. at 349–50 (emphasis omitted). Furthermore, although Rule 23(a)(2) speaks of "questions," plural, "[a] single common question will suffice," so long as it is "of such a nature that its determination 'will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *EQT Prod. Co.*, 764 F.3d at 360 (citing *Wal-Mart*, 564 U.S. at 350, 359).

Plaintiff articulates nine questions, eight of which concern the remaining NCWHA claim for wages due:

> (b) whether the Defendants failed to pay wages when due based upon the Defendants' failure to obtain a written authorization from the Wade and the NCWHA Class members in the form required by N.C. Gen. Stat. § 95-25.8(a); (c) whether Defendants unlawfully took deductions from wages in violation of N.C. Gen. Stat. § 95-25.8(b); (d) whether Defendants failed to pay Wade and the NCWHA Class members all the wages they had agreed to pay when those wages were due; (e) whether Defendants failed to compensate Wade and the NCWHA Class members at the agreed-upon rate, when Defendants used an inaccurate system to record the number of hours worked by Wade and members of the NCWHA Class; (f) whether Defendants failed to pay the Wade and the NCWHA Class members for all hours worked; (g) whether Defendants unlawfully shaved time from the timecards of Wade and the NCWHA Class

members; (h) whether Defendants failed to pay Wade and the NCWHA Class members for time spent preparing onboarding materials, taking mandatory training and attending mandatory meetings; (i) whether Defendants' failure to comply with the NCWHA was willful.

(ECF No. 72 at 10–11.) After reviewing the entirety of the record, the Court finds that the questions central to Plaintiff's claim for wages due unite putative class members under a "common contention." *See Wal-Mart*, 564 U.S. at 350. The questions here all center on Defendants' employee time recording and wage policies and practices and relate to whether Defendants properly compensated putative class members for time worked. Furthermore, these questions are all based on the same legal theory—violation of the NCWHA's payday provisions, specifically N.C. Gen. Stat. § 95-25.6 and § 95-25.7. Based on the information in the record, these questions appear well suited to common resolution—a "yes, they did" or "no, they did not" that will apply to all class members and "resolve an issue that is central to the validity" of each member's claim for wages due.

Therefore, the Court concludes that the Rule 23(a) commonality is satisfied here, as the class members are united by common questions of law and fact.

## C. Typicality

Plaintiff argues that she has satisfied typicality because her claims and the claims of the putative class members "arise from the same practices and course of conduct by Defendants." (ECF No. 72 at 11–12.) Defendants argue that Plaintiff's claims and defenses are not typical of the claims and defenses of the putative class. (ECF No. 80 at 8.) Specifically, Defendants argue that Plaintiff is unlike the putative class members because Defendants have brought a counterclaim against Plaintiff for "failing to repay a payroll cash advance prior to her resignation" and because Plaintiff has brought a retaliation claim against Defendants that is separate from the class claim. (ECF No. 80 at 9.)

9

A plaintiff moving for certification under Rule 23 must show that "the claims or defenses of the representative part[y] are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality does not require "that the plaintiff's claim and the claims of class members be perfectly identical or perfectly aligned"—some minor variation between a named plaintiff's individual claim and those of the class members she aims to represent is to be expected. *See Deiter v. Microsoft Corp.*, 436 F.3d 461, 467 (4th Cir. 2006). However, courts will readily deny class certification "when the variation in claims strikes at the heart of the respective causes of actions." *See id.*

Considering the claim for wages due, Plaintiff's circumstances are distinguishable from the putative class members. Most notably, Defendants filed a counterclaim against Plaintiff for allegedly failing to repay a $600 pay advancement. (ECF No. 5 at 11–12.) Accordingly, Plaintiff has distinct factual circumstances related to her claim for wages due and similarly, Defendants have defenses only applicable to Plaintiff, which would not apply to the putative class. These variations from the putative class, however, do not negate or undermine Plaintiff's interest in her NCWHA claim for wages due under N.C. Gen. Stat. § 95-25.6 and § 95-25.7. *See Haywood v. Barnes*, 109 F.R.D. 568, 578 (E.D.N.C. 1986) ("[T]he typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of the class members, differences in the amount of damages claimed, or even differences in the availability of certain defenses against a class representative . . . . The typicality requirement merely emphasizes that the class representative[] 'ought to be squarely aligned *in interest* with the represented group.'" (emphasis added) (citations omitted)). Even considering Plaintiff's distinctions, the heart of Plaintiff's and the putative class's claims

10

and defenses for wages due "tend to advance the same interests." *Ealy v. Pinkerton Gov't Servs., Inc.*, 514 F. App'x 299, 308 (4th Cir. 2013) (citing *Dieter*, 436 F.3d at 466–67.)

Therefore, the Court concludes that Plaintiff has satisfied the Rule 23(a) typicality requirement.

### D. Adequacy of Representation

Plaintiff argues she is an adequate representative of the class because she is a member of the class, her interests do not conflict with the other putative class members, and she understands the obligation of class representative. (ECF No. 72 at 12–13.) Plaintiff also argues that her counsel is qualified to be appointed as class counsel. (*Id.* at 13.) Defendants challenge the adequacy of both Plaintiff and her counsel arguing: (1) that Plaintiff lives a great distance from the Middle District of North Carolina as she moved to Michigan, her "time restraints," and her "lack of interest;" (ECF No. 80 at 10), and (2) that Plaintiff's counsel's "behavior during the course of litigation evidences either a lack of knowledge of the applicable law and rules, or a conscience disregard for them." (ECF No. 80 at 11.)

Under Rule 23, a representative party and class counsel must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4), (g)(4).

### (1) Plaintiffs' knowledge, involvement, and credibility

The adequacy inquiry entails an investigation into the representatives' knowledge—both of the case and of their duties to the proposed class—as well as their credibility and integrity. *See generally Monroe v. City of Charlottesville, Va.,* 579 F.3d 380, 385 (4th Cir. 2009); 1 Herbert B. Newberg & William Rubenstein, *Newberg and Rubenstein on Class Actions* §§ 3:67–3:68 (6th ed. 2022). Certification may be inappropriate where the named plaintiff demonstrates so little understanding of their case, or takes so light a hand in its direction, as to raise doubts about her ability to protect the interests of the class. *See* 1 Joseph M.

11

McLaughlin, *McLaughlin on Class Actions* § 4:29 (19th ed. 2022). "Generally," however, "the representative's understanding of the basic facts underlying the claims, [along with] some general knowledge of and a willingness and ability to participate in discovery are sufficient to meet this standard." *See id.*; *see also Gunnells*, 348 F.3d at 430 ("It is hornbook law . . . that '[i]n a complex lawsuit . . . the representative need not have extensive knowledge of the facts of the case in order to be an adequate representative.'" (alteration in original)). Certification may also be inappropriate where the named plaintiff does not demonstrate the "requisite credibility to ensure that [s]he will act as a fiduciary with respect to the class [s]he seeks to represent." *Shiring v. Tier Techs., Inc.*, 244 F.R.D. 307, 315 (E.D. Va. 2007).

With respect to knowledge and involvement, Plaintiff in this case has participated in discovery and demonstrated sufficient understanding of the case. (*See* ECF Nos. 72-1; 9-1 (Plaintiff's declaration detailing the facts that give rise to this action)). After reviewing Plaintiff's declaration and deposition testimony, the Court finds that Plaintiff has a reasonable understanding of and investment in this suit, which is all that is required. *Compare Clark v. Duke Univ.*, No. 1:16-CV-1044, 2018 WL 1801946, at *7 (M.D.N.C. Apr. 13, 2018) (concluding, based on declarations and participation in depositions, that named plaintiffs would adequately represent a class), *with Monroe*, 579 F.3d at 385 (affirming district court's decision not to certify class when named plaintiff "had little interest in or knowledge and understanding of the case" and "offered virtually no evidence refuting glaring questions as to his adequacy as a class representative").

Defendants cite excerpts from Plaintiff's deposition to support their arguments that Plaintiff lacks interest and will not fairly and adequately protect the interests of the class. (ECF No. 80 at 10.) Plaintiff responds that Defendants do not support this argument with any case

12

authority. (ECF No. 87 at 6–7.) To the extent Defendants argue that Plaintiff's deposition testimony undermines her credibility, the Court is not persuaded. The deposition testimony that Defendants present reflects that at the time she was employed for JMJ, Plaintiff was not invested in her co-workers, and since the litigation began Plaintiff has not spent much time reviewing discovery, and she has not communicated with any opt-in Plaintiffs. (*See* ECF No. 80 at 10.) The Court does not find that Plaintiff's statements clearly demonstrate "a lack of credibility regarding the allegations being made or a lack of knowledge or understanding concerning what the suit is about." *See Shiring*, 244 F.R.D. at 315. Instead, as noted in the Court's discussion of typicality, Plaintiff has adequately demonstrated the opposite. *See Romero v. Mountaire Farms, Inc.*, 796 F. Supp. 2d 700, 715 (E.D.N.C. 2011) (finding that plaintiffs met the adequacy requirement where there were "no conflicts or antagonistic interests of the named [p]laintiffs to the interests of any other production workers. The named [p]laintiffs ha[d] the same interests as all other production workers: recovering the wages earned for all uncompensated work time and full reimbursement for allegedly illegal deductions taken from all affected employees' wages.")

Therefore, Plaintiff has demonstrated both her knowledge and credibility, so the Court concludes that Plaintiff is an adequate class representative.

(2) Plaintiff's counsel's qualifications

Under Rule 23(a)(4), a court must find that class counsel is "qualified, experienced and generally able to conduct the proposed litigation." *McLaurin v. Prestage Foods, Inc.*, 271 F.R.D. 465, 476 (E.D.N.C. 2010) (quoting *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 562 (2d Cir. 1968)). Rule 23(g)(1) requires the Court to consider the work counsel has done in identifying or investigating potential claims in the action; counsel's experience in handling class actions,

other complex litigation, and the types of claims asserted in the action; counsel's knowledge of the applicable law; and the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1). Defendants excerpted portions of Plaintiff's deposition with Plaintiff's counsel's extensive objections which, Defendants contend, shows that Plaintiff's counsel lacks sufficient understanding and control of this case. (ECF No. 80 at 12–19.) Defendants do not support this argument with any authority, case law or otherwise. The Court is not persuaded by Defendants' argument that Plaintiff's counsel's alleged violation of Local Rule 30 provides an adequate basis to demonstrate that she lacks sufficient qualifications to conduct and manage this litigation. Furthermore, the record evidence shows that Plaintiff's counsel has more than twenty-four years of experience practicing labor and employment law, specifically complex wage and hour class and collective action cases, and that Plaintiff's counsel has lectured and presented on wage and hour class and collective action topics. (*See generally* ECF No. 72-13.) After reviewing Plaintiff counsel's qualifications and involvement in similar litigation, the Court finds that she possesses the necessary experience to satisfy the adequacy of representation requirement as specified in Rule 23(g)(1).

Therefore, the Court concludes that Plaintiff has satisfied the adequacy of representation requirement, and having satisfied the numerosity, commonality, and typicality requirements discussed above, Plaintiff has satisfied all the prerequisites under Rule 23(a).

### E. Certification Pursuant to Rule 23(b)(3)

Plaintiff further argues that Rule 23(b)(3) is applicable here because the common legal and factual issues of the putative class predominate over any individual issues and that class treatment is superior to other procedures for handling the claims. (ECF No. 72 at 15.) Defendants do not appear to address whether Plaintiff has satisfied the Rule 23(b)(3)

14

requirements and only assert that Plaintiff has not satisfied the Rule 23(a) prerequisites. (*See* ECF No. 80 at 19.)

Assuming the requirements of Rule 23(a) have been met, a plaintiff may obtain Rule 23(b)(3) certification if "the court finds that the questions of law or fact common to class members *predominate* over any questions affecting only individual members," and "a class action is *superior* to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3) (emphasis added). For the reasons explained below, Plaintiff has met the requirements of predominance and superiority, and therefore Plaintiff meets the requirements for certifying a class under Rule 23 for the remaining NCWHA claim, Count III for wages due.

The Rule 23(b)(3) predominance inquiry overlaps with the commonality requirement in 23(a)(2), *see Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623–24 (1997); however, the former is "more demanding," as its focus is "not only on the existence of common questions, but also on how those questions relate to the controversy at the heart of the litigation," *see EQT Prod. Co.*, 764 F.3d at 366. An individual issue is one where evidence varies between class members whereas common issues are present when "the same evidence will suffice for each member to make a prima facie showing." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quoting 2 William Rubenstein, *Newberg on Class Actions* § 4:50, 196–97 (5th ed. 2012)). Ultimately, this "balancing test of common and individual issues is qualitative, not quantitative." *Ealy,* 514 F. App'x at 305 (citing *Gunnells*, 348 F.3d at 429).

The Court first considers the questions of fact. Plaintiff and putative class members have identified factual circumstances that give rise to their claims for wages due pursuant to N.C. Gen. Stat. § 95-25.6 and § 95-25.7: Defendants' failure to compensate employees for

training, mandatory meetings, and time wrongfully reduced or "shaved." (ECF No. 72 at 1–2.) [4]

With respect to training, the record reflects that new employees were not compensated for training, (ECF Nos. 72-1 at 43:2-18, 46:21–47:7; 72-2 at 30:15–31:25; 72-5 at 28:5-17; 72-6 at 264:9–26:20), pursuant to JMJ's policy, (ECF Nos. 72-6 at 97:4–99:1; *id.* at 105:18–107:4), and that other employees had allegedly unauthorized deductions from their paychecks labeled "training," (ECF No. 72-14 at 14, 32, 44, 54).

With respect to mandatory meetings, although there is evidence that repercussions for missing meetings varied across the group homes, (*Compare* ECF No. 80-21 at 27:8–30:25; 42:8–43:4 *with* ECF No. 72-12 at 2–3), the record reflects that each JMJ group home held mandatory meetings where employees who were not working their scheduled shift would not clock in, so these employees attending the meeting were not compensated, (ECF Nos. 72-1 at 49:1-6, 12-24; 72-2 at 28:11–29:2; 72-3 at 13:14–15:2; 72-4 at 27:12–32:12; 72-5 at 39:14–41:8).

With respect to time "shaving," the record reflects that Defendant Martin regularly entered the Chronotek system and made adjustments, which were usually reductions to employee hours. (*See generally* ECF No. 72-15.)

The Court next considers the questions of law. The "payday statute" found in N.C. Gen. Stat. § 95-25.6 provides that "[e]very employer shall pay every employee all wages and tips accruing to the employee on the regular payday." Similarly, N.C. Gen. Stat. § 95-25.7 provides that "[e]mployees whose employment is discontinued for

---

[4] The record also reflects that employees were not permitted to leave the group homes until the employee taking over their responsibilities arrived, so if the employees for the next shift were late, the employees that stayed after clocking out at the end of their shift were not compensated for this time. (ECF Nos. 72-1 at 24:2-5; 72-3 at 10:18–11:20.) However, given that individual evidence would be required to establish the prima facie case for wages due based on time worked after clocking out, this issue does not meet the predominance requirement.

16

any reason shall be paid all wages due on or before the next regular payday." Therefore, to make out a prima facie case, a plaintiff must simply show that he or she (1) earned wages that (2) an employer did not pay (3) at the proper time. *Mebane v. GKN Driveline N. Am., Inc.*, 337 F.R.D. 479, 493 (M.D.N.C. 2020).

In this case, the common factual evidence in the record could demonstrate that JMJ failed to compensate employees for training and mandatory meetings and improperly reduced employees' time logs, and thus would establish a prima facie case for wages due for the class. *See McLaurin*, 271 F.R.D. at 478 (finding predominance where common evidence that defendant's compensation system was inadequate would establish a prima facie case under the NCWHA for the class, despite factual differences between employees).

With respect to wages due for training, mandatory meetings, and improper reductions from time logs, the Court finds that "the common, aggregation-enabling, issues in [this] case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v.*, 577 U.S. at 453 (citation and internal quotation marks omitted). For these reasons, Plaintiff has demonstrated predominance.

Moreover, the Court also considers the factors listed in Rule 23(b)(3) that are pertinent to findings of predominance and superiority:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

Here, each individual's claim is small, and despite the availability of attorneys' fees, the putative class members appear to have no interest in pursuing this action individually as that

option may not be financially feasible. (*See* ECF No. 72 at 15.) There is no indication of other ongoing litigation related to this controversy. Despite Plaintiff's recent move to Michigan, this District is a desirable forum as JMJ's group homes are located in this district. Finally, at this time, the Court does not anticipate significant problems with manageability.

However, to ensure the manageability, the Court will organize the class by issue, here, the common circumstances that give rise to the cause of action: wages due for training, wages due for mandatory meetings, and wages due for improper reductions from time logs. Rule 23 explicitly permits a class action to be maintained "with respect to particular issues." Fed. R. Civ. P. 23(c)(4). *See Gunnells*, 348 F.3d at 441 (quoting 6 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 18:7 (4th ed. 2002) ("Even cases which might not satisfy the predominance test when the case is viewed as a whole may sometimes be certified as a class limited to selected issues that are common.")). Furthermore, to ensure the rigorous analysis required under Rule 23 and to account for the possibility that individual issues might overtake the common issues at trial, the Court will conditionally certify the class pursuant to Rule 23(b)(3) and Rule 23(c)(4). *See Gunnells*, 348 F.3d at 430 (affirming conditional class certification where the district court noted the possibility that individual issues "might in time predominate and the case prove unmanageable"); *see also Henley v. FMC Corp.,* 20 F. App'x 108, 118 (4th Cir. 2001) (allowing "[t]he district court [to] . . . conditionally certif[y] . . . the class action pursuant to Federal Rules of Civil Procedure 23(b)(3) and 23(c)(4)(A)") (unpublished).

For all the reasons discussed herein, Plaintiff has satisfied the 23(b)(3) requirements of predominance and superiority with respect to wages due for training, wages due for mandatory meetings, and wages due for improper reductions from employee time logs, and as discussed, Plaintiff has satisfied the prerequisites under Rule 23(a). Accordingly, Plaintiff has satisfied

the requirements under Rule 23 for class certification, however in light of the manageability risks discussed above, certification is conditional.

Accordingly, the Court conditionally certifies the NCWHA Class for wages due for training, wages due for mandatory meetings, and wages due for improper reductions from employee time logs pursuant to N.C. Gen. Stat. § 95-25.6 and § 95-25.7, appoints Plaintiff Wade as class representative, and appoints L. Michelle Gessner at GessnerLaw, PLLC as class counsel.

## IV.    FLSA COLLECTIVE ACTION DECERTIFICATION

The Court will next consider Defendants' Motion to Decertify the FLSA Collective Action.

Certification of a FLSA collective action requires "(1) that the Plaintiffs in the class be 'similarly situated,'" and "(2) that the plaintiffs included in the class 'opt in' by filing with the Court their consent to the suit." *Choimbol v. Fairfield Resorts, Inc.*, 475 F. Supp. 2d 557, 562 (E.D. Va. 2006) (quoting *Brooks v. BellSouth Telecomms., Inc.*, 164 F.R.D. 561, 568 (N.D. Ala. 1995)). The FLSA does not define the term "similarly situated," and neither has the Fourth Circuit. *O'Quinn v. TransCanada USA Servs., Inc.*, 469 F. Supp. 3d 591, 604 (S.D. W. Va. 2020).

Courts have established a two-step analysis in deciding whether plaintiffs are "similarly situated," beginning with a "notice stage" that simply determines whether providing initial notification of the action to potential class members is appropriate. *Choimbol*, 475 F. Supp. at 562 (citing *de Asencio v. Tyson Foods, Inc.*, 130 F. Supp. 2d 660, 662 (E.D. Pa. 2001)). This first stage applies a "fairly lenient standard," *id.* (quoting *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213–14 (5th Cir. 1995), and "courts appear to require nothing more than substantial allegations that the putative class member[s] were together the victims of a single decision,

19

policy, or plan," *id.* at 563 (quoting *Sperling v. Hoffman-La Roche, Inc.*, 118 F.R.D. 392, 400–02 (D. N.J. 1988)). At this stage, a court "does not generally consider the merits of the claims, resolve factual disputes, or evaluate credibility." *O'Quinn*, 469 F. Supp. 3d at 605 (quoting *Hughes v. Gulf Interstate Field Servs., Inc.*, No. 2:14-cv-000432, 2015 WL 4112312, at *1 (S.D. Ohio July 7, 2015)). A defendant's subsequent motion for decertification triggers the second stage of this analysis, and only then does the court employ a "heightened fact specific standard" in determining whether plaintiffs have met the "similarly situated" bar. *Choimbol*, 475 F. Supp. 2d at 563. "Courts have identified a number of factors to consider at this [second] stage, including (1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendants that appear to be individual to each plaintiff; and (3) fairness and procedural considerations." *Weckesser v. Knight Enters. S.E., LLC*, 391 F. Supp. 3d 529, 532 (D.S.C. 2019) (alteration in original) (quoting *Curtis v. Time Warner Ent.- Advance/Newhouse P'ship*, No. 3:12-cv-2370-JFA, 2013 WL 1874848, at *3 (D.S.C. May 3, 2013)).

At the first-stage inquiry in the present matter, this Court granted Plaintiff's motion to conditionally certify a FLSA collective because the Plaintiffs "sufficiently alleged that Defendants have a policy of not compensating employees for time spent attending training and mandatory meetings." (ECF No. 21 at 5.) Plaintiff notified 97 putative members and 15 opted into this action. (ECF No. 72 at 1 (citing ECF Nos. 30-1; 30-2; 34-1; 34-2; 35-1; 35-2; 38-1; 40-1; 41-1; 41-2; 41-3; 42-1; 42-2; 43-1; 44-1).) Plaintiff amended the complaint to include allegations that Defendants did not compensate employees for overtime wages and added counts for overtime wages under the FLSA. (ECF No. 53 at 14–15).

20

The motion now before the Court is in the second stage of the inquiry. Accordingly, the Court must apply a heightened fact-specific standard to the "similarly situated" analysis to determine whether the collective action can proceed to trial or must be decertified.

Defendants argue that the conditional collective has not shown that they are similarly situated because members of the collective have different job duties, supervision, and salary, (ECF No. 82 at 11–13); members of the collective were subjected to different policies and practices with respect to mandatory meetings (*Id.* at 13); and "all issues regarding pay for mandatory meetings, training and overtime were addressed on an individual basis rather than based upon company-wide policies and plans." (*Id.* at 1.) Defendants also assert that "Wade's individual employment circumstances at JMJ were substantially different than the other opt-in plaintiffs" because "Wade is the only plaintiff who 1) was given a payroll advance, 2) is being countersued in this action, 3) complained about FLSA violations, 4) has alleged a retaliation claim against the defendants, and 5) has alleged constructive discharge."[5] (*Id.* at 14.) Plaintiff, in response argues that "[a]ll of the employees are paid based on a common policy, plan and practice," "have the same or similar job titles and job duties," "work in one of three locations operated by JMJ under the same management and reporting structures," and "are subject to the same policies and practices of JMJ." (ECF No. 84 at 2.)

### A. Factual and Employment Settings

First, the Court considers the disparate factual and employment settings of the individual plaintiffs. The record reflects that the opt-in Plaintiffs' employment settings were substantially similar. Although the residents of each JMJ group home have unique needs,

---

[5] Although Plaintiff made constructive discharge allegations during her deposition, (ECF No. 82-2 at 106:11-21), Plaintiff has not included these allegations in any pleadings before the Court. (*See* ECF No. 53 at 18.)

(ECF No. 82-1 at 138:23–141:8), the employees all performed similar functions, which is reflected in the same job post for positions across the three group homes, (*id.* at 142:23–143:3), and in JMJ's practice to staff employees across the different group homes, (*id.* at 138:5-12; 143:7-21).

## B. Defenses

Next, the Court considers the defenses available that appear to be individual to each plaintiff. Defendants suggest that because issues regarding pay for mandatory meetings, training, and overtime were addressed on an individual basis, Defendants have individual defenses for each of the opt-in Plaintiffs. (ECF No. 82 at 1.) The Court does not agree and addresses the relevant defenses each in turn.

With respect to payment for mandatory meetings, the record reflects that each JMJ group home held mandatory meetings where employees would not clock in if the meeting did not occur during their scheduled shift, so off-duty employees attending the meeting were not compensated. (ECF Nos. 72-1 at 49:1-6, 12-24; 72-2 at 28:11–29:2; 72-3 at 13:14–15:2; 72-4 at 27:12–32:12; 72-5 at 39:14–41:8.) Furthermore, Defendant Martin admitted that some new managers were not aware that employees had to be compensated for meetings, until Martin notified them. (ECF No. 82-1 at 112:8-15.) To the extent Defendants can maintain a defense with respect to mandatory meetings, it would apply to the collective.

With respect to training, although Plaintiff may have been in a slightly different position than other opt-in Plaintiffs because she did not have prior experience and needed to complete trainings, the record reflects that new employees were not compensated for training, (ECF Nos. 72-1 at 43:2-18; *id.* at 46:21–47:7; 72-2 at 30:15–31:25; 72-5 at 28:5-17; 72-6 at 264:9–26:20), pursuant to JMJ's policy, (ECF Nos. 72-6 at 97:4–99:1; *id.* at 105:18–107:4), and that

22

other employees had allegedly unauthorized deductions from their paychecks labeled "training." (ECF No 72-14 at 14, 32, 44, 54.) Taken together these practices could reflect a policy to not compensate JMJ employees for training time, so defenses would apply to the collective.

With respect to overtime, the record reflects that JMJ uses a payroll system called "Chronotek" to record employee hours. (ECF No. 82-1 at 64:19–65:15.) Employees clock in and out of shifts at the group homes by calling a number and the Chronotek system records the time data. (ECF No. 82-1 at 197:11-24.) If employees need to correct the time logged in Chronotek, they do so using a paper "correction log," and the supervisors access the Chronotek system to correct employees' time. (*Id.* at 198:16–199:13.) Supervisors maintain the "correction logs" at each group home. (*Id.*) Defendant Martin sends the time data from Chronotek to the payroll company, and the payroll company calculates employees' paychecks. (*Id.* at 64:2-16.) The record reflects that all of the opt-in Plaintiffs used Chronotek and the "correction log" system to record hours, that JMJ supervisors were responsible for making corrections to Chronotek according to employee entries in the corrections log, and that JMJ supervisors were responsible for calculating employee overtime hours manually. (*Id.* at 257:19-22). In addition, JMJ's payment records indicate that the opt-in Plaintiffs received paychecks without overtime calculations. (*See generally* ECF No. 72-14.) Finally, Chronotek records reflect that Defendant Martin regularly adjusted JMJ employees' hours, usually to decrease the time worked. (*See generally* ECF No. 72-15.) Taken together these practices could reflect a practice that resulted in JMJ employees not being compensated for overtime, so defenses with respect to these practices would apply to the collective. Opt-in Plaintiffs must also prove Defendants' knowledge to establish liability for overtime, which the Court discusses below.

23

With respect to time "shaving," as discussed above, the record reflects that Defendant Martin regularly entered the Chronotek system and made adjustments, which were usually reductions to employee hours. (*See generally* ECF No. 72-15.) Defenses to this practice, would apply to the collective.

Therefore, the record reflects that opt-in Plaintiffs were all subjected to common JMJ policies and practices regarding training, mandatory meetings, overtime pay, and reductions from employee time logs. Accordingly, the available defenses would apply to all or nearly all of the opt-in Plaintiffs.

## C. Fairness and Procedural Considerations

Defendants do not appear to directly address the fairness and procedural considerations, although Defendants state that "JMJ is a very small employer and Wade was employed there for only a few days." (ECF No. 82 at 15.) Plaintiff argues that the fairness and procedural considerations weigh in favor of denying Defendants' motion for decertification. (ECF No. 84 at 9.) Specifically, Plaintiff asserts that "[t]he difficulties in managing this FLSA collective are not especially great" and "are far less than the difficulties that would arise from requiring Plaintiffs to proceed individually." (*Id.* at 10.) Plaintiff further asserts that "because the size of individual claims is small . . . the practical considerations of litigating these claims individually, whether joined to this action or as individual actions, would be insurmountable." (*Id.* at 10–11.)

In weighing the fairness and procedural factors, courts commonly consider the primary objectives of allowing collective actions under the FLSA's § 216(b), "namely '(1) to lower costs to the plaintiffs through the pooling of resources; and (2) to limit the controversy to one proceeding which efficiently resolves common issues of law and fact that arose from the same

24

alleged activity'." *Rawls v. Augustine Home Health Care, Inc.*, 244 F.R.D. 298, 302 (D. Md. 2007) (quoting *Moss v. Crawford & Co.*, 201 F.R.D. 398, 410 (W.D. Pa. 2000)). A court "also must 'determine whether it can coherently manage the class in a manner that will not prejudice any party.'" *Id.* (quoting *Moss*, 201 F.R.D. at 410).

Here, the opt-in Plaintiffs seek to bring claims under the FLSA for failure to pay minimum wages and for failure to pay overtime wages. To state a claim for violation of the FLSA's minimum wage provision, a plaintiff must allege that "(1) [he or she was] employed by Defendant; (2) [his or her] work 'involved interstate activity'; and (3) '[he or she] performed work for which [he or she was] undercompensated.'" *Sanchez v. Truse Trucking, Inc.*, 74 F. Supp. 3d 716, 721 (M.D.N.C. 2014) (quoting *Pruell v. Caritas Christi,* 678 F.3d 10, 12 (1st Cir. 2012)). To state a claim for violation of the FLSA's overtime provision, plaintiffs must allege that "(1) [he or she] worked overtime hours without compensation; and (2) [his or her] employer knew (or should have known) that they had worked overtime but did not compensate them for it." *Duncan v. Phoenix Supported Living, Inc.*, No. 2:05CV1, 2007 WL 2226017, at *15 (W.D.N.C. July 31, 2007) (citing *Davis v. Food Lion,* 792 F.2d 1274, 1276 (4th Cir. 1986) ("[I]t is necessary for a plaintiff to show that his employer had knowledge, either actual or constructive, of his overtime work.").

Certain opt-in Plaintiffs bring these claims for Defendants' actions up to three years prior to the initiation of this action; therefore, they must also show that Defendants' violations of the FLSA were willful. *See* 29 U.S.C. § 255(a) (establishing that FLSA actions are "forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued."); *see also McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)

(citing *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 128 (1985)) (defining a willful FLSA violation as one where the "employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA].").

A determination of whether JMJ's policies and practices were compliant with the FLSA could establish the collective's prima facie case for the FLSA minimum wage claim. With respect to the FLSA overtime wages claim, opt-in Plaintiffs will also have to prove that Defendants had knowledge of their uncompensated overtime work; however, given that JMJ's employee hours were recorded and wages were calculated using the same systems, the facts related to determining any violations of the FLSA overtime provisions are manageably similar. *See Houston v. URS Corp.*, 591 F. Supp. 2d 827, 833–34 (E.D. Va. 2008) (holding that plaintiffs are similarly situated to a class when they "raise a similar legal issue as to coverage, exemption, or nonpayment o[f] minimum wages or overtime arising from at least a manageably similar factual setting with respect to their job requirements and pay provisions" (alteration in original) (internal quotations omitted)); *McLaurin*, 271 F.R.D. at 469 (noting that "[d]ifferences as to time actually worked, wages actually due and hours involved are, of course, not significant to [a similarly situated] determination").

Finally, the record indicates that JMJ had common policies and practices with respect to training, mandatory meetings, overtime pay, and reducing employee time logs that applied to all the opt-in Plaintiffs,[6] such that common resolution of the FLSA claims is possible.

---

[6] Opt-in Plaintiffs are not similarly situated with respect to FLSA claims for minimum wages or overtime wages for "work performed for the benefit of JMJ" when it was not authorized, and employees were not clocked in. (ECF No. 84 at 7 (citing ECF No. 82-1 at 122:24–123:5; 124:21–125:12; 211:8-18.)) Several other courts have decertified similar collective actions for wages based on work before and after employees' scheduled shifts, noting that "the need for such individualized inquiries precludes 'a common answer to the question of whether Plaintiffs actually worked pre-shift and post-shift work,' and thus renders it 'impossible to generate common answers on a class wide basis.'" *Creal v. Grp. O, Inc.*, 155 F. Supp. 3d 831, 839–40 (N.D. Ill. 2016).

Considering the purpose of the FLSA to allow plaintiffs with common claims to pool resources and proceed in collective actions to resolve their common issues, the fairness and procedural considerations weigh in favor of finding that the opt-in Plaintiffs are similarly situated and allowing the FLSA collective action to proceed.

In applying a heightened fact-specific standard, the Court finds that in light of the similarities between opt-in Plaintiffs' factual and employment settings, the manageably similar circumstances with regard to Defendants' defenses, and the fairness and procedural factors, Plaintiffs are similarly situated and can proceed as a collective action under the FLSA with respect to their allegations that Defendants have a policy of not compensating employees for time spent attending training and mandatory meetings, not paying overtime, and improperly reducing employee time logs.

Therefore, Defendants' Motion to Decertify the Collective Action is denied.

For the reasons stated herein, the Court enters the following:

**ORDER**

**IT IS THEREFORE ORDERED** that Plaintiff's Count IV of the Amended Complaint is preempted and is therefore **DISMISSED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Certify a Rule 23 Class (ECF No. 71), is **GRANTED IN PART** as follows:

1. The Court conditionally certifies the NCWHA Class for wages due for training, wages due for mandatory meetings, and wages due for improper reductions from employee time logs pursuant to N.C. Gen. Stat. § 95-25.6 and § 95-25.7, appoints Plaintiff Wade as class representative, and appoints L. Michelle Gessner at GessnerLaw, PLLC as class counsel. If individual issues overtake common issues at trial, the Court will reconsider whether the

requirements of Rule 23 certification remain satisfied.

**IT IS FURTHER ORDERED** that Defendants' Motion to Decertify the Collective Action, (ECF No. 81), is **DENIED.**

This, the 30th day of September 2023.

/s/Loretta C. Biggs
United States District Judge