IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| TIFFANY WADE, individually, and on behalf of all others similarly situated, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>JMJ ENTERPRISES, LLC & )<br>TRACI JOHNSON MARTIN, )<br>)<br>Defendants. ) | 1:21CV506 |

## MEMORANDUM OPINION AND ORDER

LORETTA C. BIGGS, District Judge.

Before the Court is a Motion for Summary Judgment filed by JMJ Enterprises, LLC ("JMJ") and Traci Johnson Martin ("Defendants"). (ECF No. 77). For the reasons stated herein, Defendants' Motion for Summary Judgment will be denied.

## I. BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Tiffany Wade commenced this action on June 21, 2021. (ECF No. 1.) On January 10, 2022, this Court, upon motion of Plaintiff, conditionally certified Plaintiff's action as a Fair Labor Standards Act ("FLSA") collective action under 29 U.S.C. § 216(b). (ECF No. 21 at 6.) Plaintiff subsequently filed an Amended Complaint on June 7, 2022, (ECF No. 53), adding allegations that Defendants did not pay employees overtime and adding counts for overtime wages under the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. §§ 95-25.1–95-25.25, and the FLSA, (*id.* at 14–17).

Plaintiff's Amended Complaint contains five counts, three of which are federal claims under the FLSA: (Count I) failure to pay minimum wages for all hours worked; (Count II)

failure to pay overtime wages; and (Count V) retaliation. (*Id.* at 13–15, 18.) Plaintiff also brought state claims under the NCWHA: (Count III) failure to pay wages due and (Count IV) failure to pay overtime wages. (*Id.* at 15–17.) Defendants filed an Answer to the Amended Complaint, (ECF No. 54), and asserted a counterclaim against Plaintiff for breach of contract, (ECF No. 54 at 13–14).

On February 13, 2023, Defendants filed the instant Motion For Summary Judgment. Since the filing of Defendants' motion, significant events have occurred including rulings by this Court.

On September 30, 2023, this Court found that Plaintiff's Count IV of the Amended Complaint is preempted and therefore dismissed the claim. (ECF No. 90 at 27.) This Court also granted in part Plaintiff's Motion to Certify a Rule 23 Class. (*Id.* at 27–28.) Specifically, the Court conditionally certified the NCWHA Class for wages due for training, wages due for mandatory meetings, and wages due for improper reductions from employee time logs pursuant to N.C. Gen. Stat. § 95-25.6 and § 95-25.7, appointed Plaintiff Wade as class representative, and appointed L. Michelle Gessner at GessnerLaw, PLLC as class counsel. (*Id.*) However, the Court noted that if individual issues overtake common issues at trial, the Court will reconsider whether the requirements of Rule 23 certification remain satisfied. (*Id.*) Further, in the September 30 Order, the Court denied Defendants' Motion to Decertify the Collective Action. (*Id.* at 28.) Finally, on December 1, 2023, this Court approved the Parties' proposed Rule 23 notice and ordered that notice be distributed in accordance and compliance with this Court's Order on November 14, 2023. (ECF No. 101.)

In light of the findings and conclusions of law in the September 30, 2023, Order specifically with respect to the Rule 23 class and the FLSA collective action issues in Counts I, II, and III of

2

the Amended Complaint, Defendants' Motion for Summary Judgment with respect to these claims is moot. Defendants may file a renewed motion within 10 days that addresses the claims in light of this Court's certification of the FLSA collective action and conditional certification of the Rule 23 class.

The Court will now address the remaining arguments in Defendants' Motion for Summary Judgment that remain ripe for consideration.

## II. MOTION FOR SUMMARY JUDGMENT

### A. Standard of Review

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party." *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 568 (4th Cir. 2015) (citations and internal quotation marks omitted). "[I]n deciding a motion for summary judgment, a district court is required to view the evidence in the light most favorable to the nonmovant" and to "draw all reasonable inferences in his favor." *Harris v. Pittman*, 927 F.3d 266, 272 (4th Cir. 2019) (citing *Jacobs*, 780 F.3d at 568). A court "cannot weigh the evidence or make credibility determinations," *Jacobs*, 780 F.3d at 569 (citations omitted), and thus must "usually" adopt "the [nonmovant's] version of the facts," even if it seems unlikely that the moving party would prevail at trial, *Witt v. W. Va. State Police, Troop 2*, 633 F.3d 272, 276 (4th Cir. 2011) (quoting *Scott v. Harris*, 550 U.S. 372, 378 (2007)).

Where the nonmovant will bear the burden of proof at trial, the party seeking summary judgment bears the initial burden of "pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party carries this burden, then the burden shifts to the

3

nonmoving party to point out "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In so doing, "the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013). Instead, the nonmoving party must support its assertions by "citing to particular parts of . . . the record" or "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1); *see also Celotex*, 477 U.S. at 324.

### B. Plaintiff's FLSA Retaliation Claim (COUNT V)

Defendants move for summary judgment on Plaintiff's individual claim for retaliation under the FLSA. (ECF No. 78 at 13–15.) Plaintiff initially alleged that Defendants willfully terminated her employment "because she opposed working without pay in violation of the FLSA and requested to be paid for the time she spent attending mandatory training programs." (ECF No. 53 ¶ 97.) As Defendants note, Plaintiff later stated during her deposition that Defendants retaliated against her by writing her up for not showing up to a mandatory meeting and retaliated against her by filing a counterclaim against her in this lawsuit. (*See* ECF No. 78 at 13 (citing ECF No. 78-2 at 51, 116.)) In their summary judgment brief, Defendants argue that Plaintiff's supervisory write up "had absolutely no effect on her continuing employment and compensation," that Plaintiff "did not mention FLSA violations prior to receiving the write up," and therefore Plaintiff has "failed to prove that she engaged in protected activity." (ECF No. 78 at 15.) Furthermore, Defendants contend that "[e]ven assuming *arguendo* [Plaintiff] engaged in protected activity contemporaneously while she was receiving the write up . . . she fails to establish that she suffered an adverse employment action subsequent to

4

engaging in that activity." (*Id.*)  Plaintiff responds that she did suffer an adverse employment action because (1) the write up "labeled" Plaintiff as "insubordinate" and (2) "[t]hereafter, her paycheck was short and appeared to not include overtime she had worked." (ECF No. 85 at 9.)  Plaintiff argues, *for the first time* in her response to the summary judgment motion, that JMJ's omission of her overtime wages was also retaliatory.

      The antiretaliation provision of the FLSA makes it unlawful for any person to "discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to [the FLSA]."  29 U.S.C. § 215(a)(3).  To assert a prima facie claim of retaliation under the FLSA, Plaintiff must show that (1) she engaged in an activity protected by the FLSA; (2) she suffered adverse action by the employer subsequent to or contemporaneous with such protected activity; and (3) a causal connection exists between her activity and the employer's adverse action.  *Darveau v. Detecon, Inc.*, 515 F.3d 334, 340 (4th Cir. 2008).

      To the extent Plaintiff's retaliation claim is related to her complaints about not being paid for training hours, it is not clear from the record when Plaintiff first complained about not receiving compensation for training hours.  (*See* ECF No. 78-2 at 43:5-24.)  To the extent Plaintiff's retaliation claim is related to Plaintiff's complaints about pay for the March 31, 2021, mandatory meeting, there is conflicting evidence about when Plaintiff first complained about compensation for meetings.  (*Compare* ECF No. 78-4 at 3 (Assistant to Plaintiff's supervisor stating that: "Ms. Wade never informed me that she would not attend [the meeting] unless she was compensated.  Rather, she simply indicated that she had plans for over two (2) weeks which she was not going to cancel."), *with* ECF No. 78-2 at 49:12-24 (Plaintiff recounting the same conversation about the meeting and stating: "I believe I said, 'if it's not paid, I'm not

5

going to come."")) Text message records of this conversation reflect that Plaintiff asked if employees would be paid for the mandatory meeting to which the assistant to the supervisor responded "No," and Plaintiff later stated "[I] am not going to cancel plans for a meeting that i [sic] won't be paid for." (ECF No. 78-4 at 8.) It is uncontested that Plaintiff did not attend the meeting on March 31, 2021, and on April 1, 2021, Plaintiff received a write up from her supervisors for insubordination. (ECF No. 72-12 at 2.) It is also not contested that on April 1, 2021, Plaintiff noted in the Staff Comment section of the write up form that "a mandatory meeting is considered work under federal labor law i [sic] must be compensated for them. due [sic] to the fact that i [sic] was not going to be paid i [sic] did not attend." (*Id.*)

Even assuming that Plaintiff's complaints were activity protected by the FLSA, it is undisputed that Plaintiff resigned and was not terminated. (ECF No. 78-2 at 106:11-21.) Therefore, JMJ did not terminate Plaintiff as she alleges in her Complaint. On the other hand, assuming the supervision write up for not attending the mandatory meeting was related to Plaintiff's complaints about not being compensated for training or mandatory meetings, the record suggests that the write up could be a materially adverse action "involving an ultimate employment decision related to hiring, leave, discharge, promotion, or compensation." *Darveau*, 515 F.3d at 341. Here, the write up for insubordination warned Plaintiff that if she "continues to be insubordinate, then a level two supervision (suspension) will be presented to residential counselor." (ECF No. 72-12 at 2.) In light of the threat of future discipline, this write up could have impacted Plaintiff's chance for promotion or compensation or could have preceded discharge. *See Barnes v. Charles Cnty. Pub. Sch.*, 747 F. App'x 115, 119 (4th Cir. 2018) (unpublished) (citing *Billings v. Town of Grafton*, 515 F.3d 39, 54–55 (1st Cir. 2008) (finding that

6

a letter of warning amounted to an adverse action because it included a warning that future disciplinary actions could result in further discipline)).

Plaintiff argues in her response to the summary judgment motion that JMJ's omission of her overtime wages after her April 1, 2021, complaint was also retaliatory. (ECF No. 85 at 9.) Given both Plaintiff's allegations in bringing this action and the overwhelming evidence in the record reflecting that JMJ's employee time recording and wage calculation practices could have caused JMJ to under pay employees, including for overtime, (*see* ECF No. 90 at 22–24), the record does not reflect that the alleged omission of Plaintiff's overtime pay was retaliatory.

To the extent Plaintiff argues that Defendants' counterclaim is retaliatory, a review of the record reflects that Defendants' counterclaim for $600 is related to an outstanding payroll advance, *see infra* pp. 7–9, and therefore has a reasonable basis in both fact and law, which is all that is required to dispute that the claim is retaliatory, *see Darveau*, 515 F.3d at 343.

Although, the record at this stage does not support Plaintiff's contentions that the alleged omission of overtime pay or the counterclaim for $600 were retaliatory, there is a genuine dispute as to when Plaintiff first engaged in activity protected under the FLSA as well as sufficient evidence in the record to show that the write up for insubordination could have been retaliatory. For these reasons, Defendants are not entitled to judgment as a matter of law as to this claim, and therefore summary judgment is inappropriate.

Defendants' Motion for Summary Judgment as to Plaintiff's retaliation claim, Count V, is denied.

### C. Defendants' Counterclaim for Breach of Contract

Defendants also move for summary judgment on their counterclaim for breach of contract. As an initial matter, the Court finds it appropriate to exercise supplemental jurisdiction over Defendants' counterclaim. Where federal district courts have proper original jurisdiction over a claim, they may exert "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy," 28 U.S.C. § 1367(a), "deriv[ing] from a common nucleus of operative fact," *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966). In deciding whether to exert supplemental jurisdiction, the Court must "consider and weigh in each case, and at every stage of litigation, the values of judicial economy, convenience, fairness, and comity." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). Defendants' state law breach of contract counterclaim and Plaintiff's claims under the FLSA are related to and derived from a common nucleus of operative facts. To promote judicial economy, the Court exercises supplemental jurisdiction over this claim.

Defendants contend that JMJ paid Plaintiff a $600 payroll advance for April 2021 and Plaintiff signed an agreement which stated that the payment was a payroll advance. (ECF No. 78 at 21.) Defendants further contend that Plaintiff resigned in April 2021 before working the hours to pay back the advance, and as a result JMJ suffered a loss of $600. *Id.* Plaintiff contends that she did not receive her full pay and is "still missing a significant portion of her wages for hours worked." (ECF No. 85 at 11.) Plaintiff does not appear to argue that she worked long enough in April 2021 to cover the $600 advance, but instead she argues that she

8

was entitled to wages from her work in February 2021 such that JMJ has "already reimbursed itself for the advance." (ECF Nos. 85 at 11; 80-2 at 77:11-22.)

Under North Carolina law, to establish a claim for breach of contract, a plaintiff must show "(1) existence of a valid contract and (2) breach of the terms of that contract." *Montessori Child.'s House of Durham v. Blizzard*, 781 S.E.2d 511, 514 (N.C. Ct. App. 2016) (quoting *Poor v. Hill*, 530 S.E.2d 838, 843 (N.C. Ct. App. 2000)). A valid and enforceable contract requires "an agreement of the parties upon the essential terms of the contract, definite within themselves or capable of being made definite." *Micro Cap. Invs., Inc. v. Broyhill Furniture Indus., Inc.*, 728 S.E.2d 376, 381 (N.C. Ct. App. 2012) (quoting *Brawley v. Brawley*, 361 S.E.2d 759, 762 (N.C. Ct. App. 1987)), *aff'd*, 736 S.E.2d 172 (N.C. 2013). A valid contract also requires sufficient consideration. *McCraw v. Llewellyn*, 123 S.E.2d 575, 578 (N.C. 1962).

The record reflects that on March 25, 2021, Defendant Martin signed a check from JMJ Enterprises to Plaintiff for $600 with "pay advance April" written in the "Memo" line, (ECF. No. 78-2 at 129), and the following day, Defendant Martin and Plaintiff signed a document specifying that the $600 payment on March 25, 2021, was a "pay advancement." (*Id.* at 128.) The record suggests that the Parties had a valid and enforceable contract. The record also reflects that Plaintiff's hourly pay rate was approximately $9 an hour, (*id.* at 77:8-14), and during the month of April, Plaintiff worked at Fresh Start Home for Children from April 1–4, 2021, called out sick on April 8, 2021, and resigned on April 9, 2021, (ECF No. 78-4 at 4).

Based on the information before the Court, it seems unlikely that JMJ owed Wade more than $600, such that JMJ's counterclaim is an attempt to "double dip." (ECF No. 85 at 11.) However, Plaintiff's exact start date and hours worked remain disputed, (*see* ECF No. 78-

9

2 at 6:8-19, 63:23–64:5, 77:8-14; ECF No. 78-1 at 97:4–99:1), so the Court cannot rule on this claim at this stage of the litigation. Because the Court must draw all reasonable inferences in favor of the nonmoving party, a determination of Defendants' loss, if any, would be premature at this point in the litigation. Therefore, summary judgment as to Defendants' counterclaim is denied.

### D. Defendant Martin is a Proper Defendant

Defendants argue that Defendant Martin is an improper party and thus she may not incur individual liability simply because she is the sole owner of JMJ. (ECF No. 78 at 20–21.) Plaintiff argues that Defendant Martin is individually liable because she is a joint employer with JMJ. (ECF No. 85 at 9.)

Under the FLSA and the NCWHA, an employer is "any person acting directly or indirectly in the interest of an employer in relation to an employee." N.C. Gen. Stat. § 95-25.2(5); 29 U.S.C. § 203(d). Furthermore, under both Acts, an individual can be an "employer" and therefore be personally liable for wages and damages. *Garcia v. Frog Island Seafood, Inc.*, 644 F. Supp. 2d 696, 720 (E.D.N.C. 2009) (citing *Brock v. Hamad*, 867 F.2d 804, 808 n.6 (4th Cir. 1989)); *Powell v. P2Enterprises, LLC*, 786 S.E.2d 798, 801 (N.C. Ct. App. 2016) ("Under both state and federal law, the term 'person' includes individuals as well as commercial entities such as corporations. Accordingly, it is well established that, under certain conditions, individuals may be subjected to liability for unpaid wages" (internal quotation marks and citations omitted)), *cert. denied*, 794 S.E.2d 326 (N.C. 2016) (Mem.); *see also Chao v. Self Pride, Inc.*, 232 F. App'x 280, 283 (4th Cir. 2007) (unpublished) (per curiam) ("[T]he CEO . . . was an employer as defined in § 203(a) and therefore also liable personally.")

To determine "whether an individual is an 'employer,' courts apply an economic reality test, which examines: the totality of the circumstances to determine whether the individual has sufficient operational control over the workers in question and the allegedly violative actions to be held liable for unpaid wages or other damages." *Thompson v. Blessed Home Inc.*, 22 F. Supp. 3d 542, 550–51 (E.D.N.C. 2014) (quoting *Garcia*, 644 F. Supp. 2d at 720–21) (internal quotation marks omitted). Courts commonly consider "whether the individual: (1) had the power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records. These factors are not exclusive nor is any one factor dispositive." *Id.* (quoting *Garcia*, 644 F. Supp. 2d at 720–21) (internal quotation marks omitted).

The record indicates that as sole owner of JMJ, Defendant Martin hired and fired JMJ employees, (ECF No. 78-1 at 53:23–54:15, 109:8-25; 171:19-21), controlled the conditions of employment as she set employee pay, (*id.* at 71:18-21; 176:4-10), worked in the JMJ office and was responsible for maintaining employment records, (*id.* at 109:8-25, 296:12-16), and the JMJ group home supervisors implemented Defendant Martin's directions and instructions, (*id.* at 112:8-15, 171:9–172:25). The record also reflects that when employees had questions or wanted to raise concerns about their wages, the supervisors would report those concerns to Defendant Martin, (*id.* at 129 at 3-7, 130:15-21), and least one supervisor instructed employees to contact Defendant Martin directly, (ECF No. 78-21 at 16:1-9). Defendant Martin stated that she would "take care of" employee wages, if needed, when she received complaints from employees. (ECF No. 78-1 at 126:17-25). There is sufficient evidence in the record showing

11

that Defendant Martin had operational control over the employees at JMJ and JMJ's allegedly unlawful actions.

Once operational control is established, courts do not separately consider factors related to piercing the corporate veil as Defendants argue. *See Brock*, 867 F.2d at 808 n.6 ("Even if the businesses were within a corporate structure, [Defendant] would still be the employer who would be liable for violations of the FLSA."); *Dole v. Solid Waste Servs., Inc.*, 733 F. Supp. 895, 923 (E.D. Pa. 1989), *aff'd*, 897 F.2d 521 (3d Cir. 1990), and *aff'd sub nom. Appeal of Solid Waste Servs., Inc.*, 897 F.2d 524 (3d Cir. 1990) ("The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under [the FLSA] for unpaid wages." (alteration in original)). There is enough information and evidence in the record that a reasonable jury could find that Defendant Martin exercised operational control and is therefore an employer along with JMJ. Therefore, it would be inappropriate for the Court to dismiss Defendant Martin at this stage of the case.

Should Defendants produce evidence at trial that undermines Defendant Martin's operational control, the Court will consider such evidence at that time. For all these reasons, the Court declines to dismiss Defendant Martin at this stage of the litigation.

For the reasons stated herein, the Court enters the following:

## ORDER

**IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment, (ECF No. 77), is **DENIED** as to all claims except Defendants' summary judgment motion

with respect to the Rule 23 class and the FLSA collective action claims in Counts I, II, and III of the Amended Complaint is **DENIED as MOOT.**

**IT IS FURTHER ORDERED** that Defendants may file a renewed Motion for Summary Judgment as to Counts I, II, and III within 10 days of the entry of this ORDER that addresses the claims in light of this Court's certification of the FLSA collective action and conditional certification of the Rule 23 class.

This, the 13th day of February 2023.

/s/ Loretta C. Biggs
United States District Judge