IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| TIFFANY WADE, individually, and on behalf of all others similarly situated, ) ) ) Plaintiff, ) ) ) v. ) ) JMJ ENTERPRISES, LLC & TRACI ) JOHNSON MARTIN, ) ) Defendants. ) | 1:21CV506 |

**MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, District Judge.

Tiffany Wade, on behalf of herself and all others similarly situated, ("Plaintiffs"), brought this action alleging violations of the Fair Labor Standards Act and violations of the North Carolina Wage and Hour Act, against JMJ Enterprises, LLC and Traci Johnson Martin ("Defendants"). (ECF No. 53 ¶¶ 74–95.) Before the Court is Defendant's Second Motion for Summary Judgment. (ECF No. 108.) For the reasons stated herein, Defendants' motion will be granted in part and denied in part.

**I.   BACKGROUND**

Plaintiff Tiffany Wade ("Plaintiff Wade") commenced this action on June 21, 2021. (ECF No. 1.) On January 10, 2022, this Court, upon motion of Plaintiff, conditionally certified Plaintiff's action as a Fair Labor Standards Act ("FLSA") collective action under 29 U.S.C. § 216(b) with respect to her claims under the FLSA. (ECF No. 21 at 6.) Plaintiffs subsequently filed an Amended Complaint on June 7, 2022. (ECF No. 53.) Plaintiffs' Amended Complaint contains five counts, three of which are federal claims under the FLSA: (Count I) failure to

pay minimum wages for all hours worked; (Count II) failure to pay overtime wages; and (Count V) retaliation. (*Id.* at ¶¶ 66–73, 74–81, 96–98.) Plaintiffs' two other claims are state law claims under the North Carolina Wage and Hour Act ("NCWHA"): (Count III) failure to pay wages due, and (Count IV) failure to pay overtime wages. (*Id.* at ¶¶ 82–88, 89–95.) Defendants in their Answer to the Amended Complaint asserted a counterclaim against Plaintiff Wade for breach of contract. (ECF No. 54 at 13–14.)

On September 30, 2023, this Court, granted in part Plaintiff's Motion to Certify a Rule 23 Class, dismissed Count IV of the Amended Complaint, and denied Defendants' Motion to Decertify the Collective Action. (ECF No. 90 at 27–28.) Regarding class certification, the Court conditionally certified the NCWHA class for wages due for training, wages due for mandatory meetings, and wages due for improper reductions from employee time logs pursuant to N.C. Gen. Stat. § 95-25.6 and § 95-25.7. (*Id.*) Further, regarding Count IV of Plaintiffs' Amended Complaint, failure to pay overtime wages under the NCWHA, the Court found that count to be preempted by the FLSA. (*Id.* at 4.)

Following discovery, Defendants filed a Motion for Summary Judgment. (ECF No. 77.) The Court found that a genuine issue of material fact exists with respect to Count V, Plaintiff Wade's individual count of retaliation, and denied summary judgment. (ECF No. 103 at 7.) Additionally, the Court denied summary judgment with respect to Defendants' counterclaim of breach of contract. (*Id.* at 10.) Further, as the Court made findings regarding class certification prior to ruling on Defendants Motion for Summary Judgment, the Court found Defendants' motion to be moot with respect to the issues in Count I, II, and III as they pertain to the Rule 23 class and the FLSA collective action. (*Id.* at 2–3.) The Court ordered that Defendants were allowed to file a renewed Motion for Summary Judgment as to Counts

2

I, II, and III. (*Id.*) Therefore, here, Defendants' Second Motion for Summary Judgment solely addresses the issues in Counts I, II, and III of Plaintiffs' Amended Complaint. (*See* ECF No. 108.)

The facts and circumstances regarding this case surround Plaintiffs employment at JMJ Enterprises. Traci Johnson Martin ("Defendant Martin") is the owner of JMJ Enterprises ("JMJ"), a residential mental health company. (ECF No. 78-1 at 20:5-13.) JMJ provides care for clients that are "not able to care for themselves," or who have "mental health issues." (*Id.* at 20:18-19, 21:9.) Additionally, Defendants operate three different group homes in Greensboro, North Carolina. (*Id.* at 27:19-23.) Defendant Martin is the sole owner and administrator, and she employs qualified professionals, program directors, associate professionals, and paraprofessionals at each group home. (*Id.* at 32:1-4, 32:7-8, 53:23-54:1, 124:19-22.)

To receive funding from the state of North Carolina, Defendants are required to have employees certified in CPR, first aid, medication management, blood-borne pathogens, and seizure management. (*Id.* at 95:13-20, 100:8-11.) This training occurs "before [employees] can work for [Defendants]." (*Id.* at 95:19-20.) Thereafter, during the course of their employment, employees undergo yearly trainings to attain recertification. (*Id.* at 106:23-24.)

Further, Plaintiffs were paid on a monthly basis. (*Id.* at 77:12-13.) To keep track of time throughout the month, Defendants utilized "chrontek" a system which requires the staff to call into a phone line to clock in and out of work. (*Id.* at 64:15-65:4.) The phone system asks employees for their name and identification code and records the time, which is then downloaded and sent to Defendants' payroll system. (*Id.* at 65:1-15.) If any adjustments need to be made, employees are expected to have those changes written down on a time correction

3

sheet located at each group home. (*Id.* at 198:24-25, 199:19-24.) The qualified professionals are then in charge of making corrections from the time correction sheet to employee's hours. (*Id.* at 64:12-14, 202:20–23.)

Here, Plaintiffs allege that Defendants failed to compensate them for time associated with attending trainings and mandatory meetings, failed to pay them overtime, and failed to pay them on time. (ECF No. 53 ¶¶ 66–88.) Defendants filed this second Motion for Summary Judgment arguing that they are entitled to judgment as a matter of law related to these allegations. (ECF No. 109 at 5.) The Court will now address Defendants' arguments.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party." *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 568 (4th Cir. 2015) (internal citations and quotations omitted). "[I]n deciding a motion for summary judgment, a district court is required to view the evidence in the light most favorable to the nonmovant" and to "draw all reasonable inferences in his favor." *Harris v. Pittman*, 927 F.3d 266, 272 (4th Cir. 2019) (citing *Jacobs*, 780 F.3d at 568). A court "cannot weigh the evidence or make credibility determinations," *Jacobs*, 780 F.3d at 569 (citations omitted), and thus must "usually" adopt "the [nonmovant's] version of the facts," even if it seems unlikely that the nonmoving party would prevail at trial, *Witt v. W. Va. State Police, Troop 2*, 633 F.3d 272, 276 (4th Cir. 2011) (quoting *Scott v. Harris*, 550 U.S. 372, 378 (2007)).

Where the nonmovant will bear the burden of proof at trial, the party seeking summary judgment bears the initial burden of "pointing out to the district court . . . that there is an

absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party carries this burden, then the burden shifts to the nonmoving party to point out "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In so doing, "the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013). Instead, the nonmoving party must support its assertions by "citing to particular parts of . . . the record" or "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1); *see also Celotex*, 477 U.S. at 324.

## III. DISCUSSION

### A. Failure to Pay Minimum Wages for all Hours Worked Under the FLSA

Congress enacted the FLSA in 1983 "to protect all covered workers from substandard wages and oppressive working hours." *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981) (citations omitted). "[T]he FLSA was designed to give specific minimum protections to individual workers and to ensure that each employee covered by the [FLSA] would receive a fair day's pay for a fair day's work and would be protected from the evil of overwork as well as underpay." *Id.* (internal quotation marks omitted) (citations omitted) (emphasis omitted).

For employers to satisfy their FLSA obligations, they must pay employees hourly wages in excess of the statutory minimum-wage and overtime requirements. *Wai Man Tom v. Hosp. Ventures LLC*, 980 F.3d 1027, 1032 (4th Cir. 2020). This payment must be "for all work" preformed. *Tenn. Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 602 (1944),

5

*superseded by statute on other grounds*, 29 U.S.C. § 251(a), *as recognized in Integrity Staffing Solutions, Inc., v. Busk*, 574 U.S. 27 (2014).

Plaintiffs in the Amended Complaint allege that they "were not paid minimum wages for all hours actually worked." (ECF No. 53 ¶ 71.) Specifically, Plaintiffs allege that they were not paid to attend training sessions nor paid to attend mandatory meetings. (*Id.* ¶¶ 69, 70.)

### 1. State Mandated Training Sessions

The first issue before the Court is whether Plaintiffs, who have to undergo state mandated training before they start working in the group homes, are considered employees under the FLSA. Defendants argue that the state mandated trainings Plaintiffs underwent "do[] not invoke the FLSA" if they were conducted prior to employment. (ECF No. 109 at 8.) Defendants specifically argue that Plaintiffs could not be considered employees until "complet[ion] [of] voluntary state mandated requirements related to healthcare providers." (*Id.*) Plaintiffs in their Response do not address Defendants argument that Plaintiffs are not employees until they have completed training. (*See* ECF No. 112.) Therefore, the Court will determine if Defendants have proven that they are entitled to summary judgment on this issue as a matter of law.

The FLSA defines an employee as "any individual employed by an employer," and it defines the verb "employ" to mean "suffer or permit to work." *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992) (quoting 29 U.S.C. §§ 203(e)(1), (g)). The Supreme Court has defined "work" and "employment" as "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." *Tenn. Coal*, 321 U.S. at 598.

6

Case 1:21-cv-00506-LCB-JLW    Document 117    Filed 04/01/25    Page 6 of 13

Additionally, the Supreme Court has held that "the [FLSA] covers trainees, beginners, apprentices, or learners if they are employed to work for an employer for compensation." *Walling v. Portland Terminal Co.*, 330 U.S. 148, 151 (1947). This means that "employers who hire beginners, learners, or handicapped persons, [and] expressly or impliedly agree to pay them compensation, must pay them the prescribed minimum wage." *Id.* at 151-52.

When a training program "most greatly benefits" the trainee it is not covered by the FLSA. *Id.* at 153; *see also McLaughlin v. Ensley*, 877 F.2d 1207, 1209 (1989). The Fourth Circuit "specifically recognize[s] the importance of transferability of the training received when balancing who—employer or trainee—benefitted most from the training." *Harbourt v. PPE Casino Resorts Maryland, LLC*, 820 F.3d 655, 660 (4th Cir. 2016) (citing *Ensley*, 877 F.2d at 1210).

Here, Plaintiffs underwent training for CPR, first aid, medication management, and seizure management prior to their first day of work. Defendants did not pay Plaintiffs their hourly wage while they were at these trainings. (ECF No. 78-1 at 98:1-3.) While these trainings are required for Plaintiffs to work for Defendants, they are not trainings that solely benefit Plaintiffs. All the trainings Plaintiffs received can be used elsewhere as, in fact, Defendants have hired employees that do not need to attend pre-employment training as they already had the necessary certifications. (*Id.* at 96:15-21.)

In *McLaughlin v. Ensley*, the Fourth Circuit held that routemen of a food distribution company were to be considered "employees" for FLSA purposes because they participated in a five-day training program where they learned to load trucks, maintain vending machines, and helped the experience routeman perform their duties. 877 F.2d at 1208, 1210. In that case, the employer received the principal benefit because trainees were taught "specific job functions related to [the employer's] own business," which were of "practically no transferable

7

usefulness." *Id.* at 1210. That is not the case before this Court. The trainings Plaintiffs underwent before their first day of work in the group homes were not specific to the functions related to JMJ Enterprises. *See Chao v. Tradesmen Intern., Inc.*, 310 F.3d 904, 909 (6th Cir. 2002) (citing *Portland Terminal*, 330 U.S. at 148) ("under settled Supreme Court precedent, employers who furnished training to potential employees were not required under the FLSA to compensate trainees for time spent in the training program") (emphasis omitted). Therefore, this Court concludes that Defendants are entitled to judgment as a matter of law on the issue of whether they violated the FLSA by failing to pay Plaintiffs an hourly wage for training sessions held prior to the first day of work in the group homes.

Plaintiffs also allege that they were not paid when they had to recertify their trainings during the course of their employment. The Court finds that there is a genuine dispute of material fact on whether Defendants failed to pay Plaintiffs who had to recertify their training.

The FLSA outlines factors that must be met in order for mid-employment training not to be counted as working time: "(1) [a]ttendance is outside of the employee's regular working hours; (2) [a]ttendance is in fact voluntary; (3) [t]he course, lecture, or meeting is not directly related to the employee's job; and (4) [t]he employee does not preform any productive work during such attendance." 29 C.F.R. §§ 785.27(a)-(d).

Defendant Martin herself testifies that "every year [employees] have to be recertified . . . [i]f they work for us; they just have to clock in and out for that." (ECF No. 78-1 at 106:24-107:1.) While Defendant Martin testifies that employees were paid for recertification, Plaintiffs that were long term employees testified that they were not compensated for trainings they took every year, and the cost of the trainings were deducted from their paychecks. (ECF Nos. 78-23 at 31:3-11; 78-24 at 28:14-17.) Additionally, Defendant Martin's testimony that

8

Case 1:21-cv-00506-LCB-JLW   Document 117   Filed 04/01/25   Page 8 of 13

employees clock in and out for recertification trainings creates genuine disputes of fact on whether the trainings were conducted outside of the employee's regular working hours, the first element that must be met for mid-employment training to not be counted as working time. *See* 29 C.F.R. § 785.27(a). As Defendants have not shown evidence of a lack of genuine dispute on the first element, the Court will not consider the other elements as they are all necessary to prevail on the claim.

Thus, the Court finds that there is a genuine dispute of material fact regarding whether Defendants failed to pay current employees for their yearly recertification trainings. However, Defendants are entitled to judgment as a matter of law regarding trainings that were held prior to Plaintiffs first day of work.

2. <u>Mandatory Meetings</u>

Plaintiffs allege that Defendants failed to pay them for time spent in mandatory meetings. (ECF No. 53 ¶ 70.) As stated above, employers must pay their employees hourly wages in excess of the statutory minimum-wage "for all work" preformed. *Tenn. Coal*, 321 U.S. at 602. While Defendant Martin's testimony is that she informed her employees "that they had to pay their staff for any mandatory meeting," (ECF No. 78-1 at 112:13-14), Plaintiffs testify to the contrary. Plaintiffs state that they were not compensated for the hours they spent attending mandatory meetings. (*See* ECF Nos. 78-12 at 7; 78-22 at 14:24-15:2; 78-24:22-24.) Therefore, there is a genuine dispute as to whether Plaintiffs were paid for mandatory meetings.

**B.     Failure to Pay Overtime Wages Under the FLSA**

"[T]he FLSA requires employers to pay overtime to covered employees who work more than 40 hours in a week." *Encino Motorcars, LLC v. Navarro*, 584 U.S. 79, 81 (2018) (citing 29 U.S.C. § 207(a)). Overtime compensation must be "at a rate not less than one and one-half

9

times the regular rate at which [a covered employee] is employed." 29 U.S.C. § 207(a)(1). Section 216(b) of the Act gives employees a cause of action against employers who have violated § 207(a)(1) and allows them to recoup the overtime wage plus liquidated damages, attorney's fees, and costs. 29 U.S.C. § 216(b).

"To establish a claim for unpaid overtime wages, an employee must establish, by a preponderance of the evidence, (1) that [they] worked overtime hours without compensation, (2) the amount and extent of overtime work as a matter of just and reasonable inference, and (3) that [their] employer knew or should have known that [they] worked overtime." *Castillo v. Joann Urquhart, M.D., P.C.*, 855 F. App'x 877, 879–80 (4th Cir. 2021) (citing *Davis v. Food Lion*, 792 F.2d 1274, 1276 (4th Cir. 1986)) (internal quotation marks omitted).

To survive summary judgment, a non-movant plaintiff must show "the amount and extent of improperly compensated work as a matter of just and reasonable inference." *Pforr v. Food Lion, Inc.*, 851 F.2d 106, 108 (4th Cir. 1988) (internal quotation marks omitted) (citations omitted). Plaintiffs may utilize "estimates and approximations" to satisfy this burden. *Castillo*, 855 F. App'x at 880 (citing *Pforr*, 851 F.2d at 106, 107–09).

Regarding the first two elements, deposed Plaintiffs state that they worked overtime without compensation. (ECF Nos. 78-22 at 15:3-7; 78-24 at 16:8-17.) However, Defendants argue that Plaintiffs failed to put forth actual evidence of their overtime hours worked. (ECF No. 109 at 20.) The FLSA requires that employers "make, keep, and preserve" records of wages, hours, and "other conditions and practices of employment." 29 U.S.C. §211(c). "A prima facie case can be made through an employee's testimony giving [their] recollection of hours worked . . . [and their case] is not to be dismissed nor should recovery be denied, because proof of the number of hours worked is inexact or not perfectly accurate." *McFeeley v. Jackson*

*St. Entm't, LLC*, 47 F. Supp. 3d 260, 276 (D. Md. 2014), aff'd 825 F.3d 235 (4th Cir. 2016) (citing *Donovan v. Kentwood Dev. Co.*, 549 F. Supp. 480, 485 (D. Md. 1982)) (internal quotation marks omitted).

"When employment records are inaccurate or inadequate and the employee cannot offer convincing substitutes, the court is not to penalize the employee by denying him recovery on the ground that he is unable to probe the precise extent of hours of uncompensated work." *McFeeley*, 47 F. Supp. 3d at 276 (citation omitted) (internal quotation marks omitted).

In her deposition, Defendant Martin states that they were unable to find the logs of employee time adjustments. (ECF No. 78-1 at 226:22-24; 227:15-20.) The Court will not penalize Plaintiffs for their inability to give precise numbers on the amount of overtime they earned as the full records of Plaintiffs time were unable to be produced in this case. *See Landers v. Quality Commc'ns, Inc.*, 771 F.3d 638, 645 (9th Cir. 2014) ("[M]ost[,] if not all[,] of the detailed information concerning a plaintiff-employee's compensation and schedule is in the control of the defendants.").

Regarding the third element of Plaintiffs' FLSA claim, Defendants have the burden to prove that there is no genuine dispute as to their knowledge of Plaintiffs' uncompensated overtime. *See Bailey v. Cnty. Of Georgetown*, 94 F.3d 152, 157 (4th Cir. 1996). The Court finds there are genuine disputes related to this element as Defendants own evidence shows that there have been complaints of uncompensated overtime. Defendant Martin was asked "[i]s it your testimony that no employees have ever complained to you about you shorting their paycheck for regular time or overtime?" (ECF No. 78-1 at 126:17-19.) To which Defendant Martin responds, "[n]o that's not my testimony . . . [i]f they said that they were short then . . . I'll go and I'll take care of it immediately." (*Id.* at 126:20-25.)

11

The lack of adequate records of the hours Plaintiffs worked and Defendant Martin's own testimony that she has been made aware of instances of uncompensated overtime create a genuine dispute of material fact on this claim.

### C. Failure to Pay Wages Due Under the NCWHA

In the Amended Complaint, Plaintiff alleges that Defendants violated the NCWHA, N.C. Gen. Stat. § 95-25.6 and § 95-25.7, by failing to pay for time spent attending trainings, failure to compensate for each hour worked, and failure to timely pay wages when due. (ECF No. 53 at ¶¶ 83–86.) In its previous Order, the Court conditionally certified the NCWHA class for wages due for training, wages due for mandatory meetings, and wages due for improper reductions from employee time logs. (ECF No. 90 at 27–28.)

§ 95-25.6 of the NCWHA is commonly known as the "payday statute" and requires each employer to pay "all wages and tips accruing to the employee on the regular payday." *See Martinez-Hernandez v. Butterball, LLC*, 578 F. Supp. 2d 816, 818, 821 (E.D.N.C. Sept. 2, 2008) (quoting N.C. Gen. Stat. § 95-25.6) (internal quotation marks omitted). Similarly, N.C. Gen. Stat. § 95-25.7 provides that, "[e]mployees whose employment is discontinued for any reason shall be paid all wages due on or before the next regular payday." § 95-25.7.

Here, there are genuine disputes of material fact on whether Defendants violated N.C. Gen. Stat. § 95–25.6 and § 95-25.7. Regarding Defendants alleged failure to pay wages when due, Plaintiffs allege that paychecks have taken longer than one month before they were received. (ECF No. 78-2 at 46:11-14.) Defendant Martin confirms this when asked "that was the month you weren't paying people until the 22nd following the month worked, correct?" (ECF No. 78-1 at 272:3-5.) To which she responds "mm-hmm . . . it was the next month . . . that they got paid." (*Id.* 272:6, 272:11-12.) Additionally, Plaintiffs have stated that they clocked

12

in more hours than were reflected on their paystubs and that they were, at times, unable to receive their paystubs. (ECF Nos. 78-2 at 46:7-8; 78-12 at 5–6; 78-21 at 21:19-23.) *See Webb v. Daymark Recover Sevs., Inc.*, 646 F. Supp. 3d 675, 688–89 (M.D.N.C. Dec. 20, 2022) (finding that discrepancies in employees timesheet when compared to their paystubs created a genuine dispute on the payday claim).

There are also genuine disputes regarding whether improper reductions were taken from employee's paychecks and whether they were paid for trainings. Plaintiffs state that their paystubs would include itemized deductions for trainings. (ECF No. 78-23 at 31:15-25.) When Defendant Martin was asked whether she had written authorization to take deductions for trainings out of an employee's paycheck she states, "I don't know. I have no idea." (ECF No. 78-1 at 273:22-24.)

Therefore, Defendants have not shown an absence of any genuine dispute of material fact as it pertains to their alleged failure to pay wages due under the NCWHA.

Defendants' motion will be granted in part and denied in part.

For the reasons stated herein, the Court enters the following:

## ORDER

**IT IS THEREFORE ORDERED** that Defendants' Second Motion for Summary Judgment, (ECF No. 108), is **GRANTED in part** and **DENIED in part**. It is **GRANTED** with respect to Plaintiff's claim in Count I of failure to pay wages due for trainings that occurred prior to the first day of work, and it is **DENIED** with respect to all other claims under Counts I, II, and III.

This, the 1st day of April 2025.

/s/ Loretta C. Biggs
Senior United States District Judge
