IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| TIFFANY WADE on behalf of herself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 1:21-CV-506 |
| JMJ ENTERPRISES, LLC, and TRACI JOHNSON MARTIN, | ) ) ) | |
| Defendant. | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Catherine C. Eagles, Chief District Judge.

A jury found that the defendants, JMJ Enterprises, LLC and its owner Traci Martin, violated state and federal wage and hour laws by underpaying workers at group homes they operate. The jury awarded damages for the federal violations to opt-in members of a Fair Labor Standards Act collective. Doc. 181. Damages for the Rule 23 class injured by state law violations was bifurcated for resolution later. *See* Doc. 167.

Upon consideration of the parties' competing submissions as to the best way to resolve the state law damages claims of the class members, the Court concludes that a jury trial is necessary to protect the defendants' Seventh Amendment rights. To help the parties prepare for the trial and to avoid some of the problems that arose in the lead-up to and during the first trial, the Court will impose additional requirements to make the trial run smoothly and efficiently.

## I.    A Jury Trial Is Necessary

The parties have filed submissions directed to the options for determining damages for the class.  The plaintiff proposes that the Court "review the Rule 1006 [payroll data] summaries, resolve any disputes about whether those summaries accurately reflect the underlying records, and then determine the aggregate amount those records yield under the [jury's] verdict."  Doc. 192 at 7.  Although it is not entirely clear from her briefs, the plaintiff seems to propose that the Court sum the missing wages and improper deductions from the defendants' records and increase that total by 28.84% to calculate class damages.  *See id*. at 6–7.  In response, the defendants assert that "the issue of class damages must be submitted to a jury for resolution."  Doc. 194 at 3. [1]

The Seventh Amendment provides in relevant part that "the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States."  U.S. Const. amend. VII.  "It has long been recognized that 'by the law the jury are judges of the damages.'"  *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 353 (1998) (quoting *Lord Townsend v. Hughes*, 86 Eng. Rep. 994, 994–95 (KB 1676)).

---

[1] The defendants cite *Reality Equities Corp, v. Gerosa*, 30 Misc. 2d 481, 483-84, 209 N.Y.S.2d 446, 450-51 (Sup. Ct. 1960) for the proposition that "in successful class actions, the courts face the necessity of establishing an efficient procedure for the allocation and distribution of the damages to each individual class member."  Doc. 194 at 1. The Court does not question that proposition, but nothing in that case supports it.  It is a mystery why counsel cited a 1960 New York state case irrelevant to the point.  Perhaps counsel fell victim to for careless use of artificial intelligence in their legal research.  Whether that is so or not, defense counsel is reminded of the provisions of Rule 11 of the Rules of Civil Procedure.  It is a violation of that rule to cite a case that does not support the proposition stated.

The plaintiff implicitly acknowledges that the Seventh Amendment requires a jury determination but contends that a jury has already made the necessary decisions. *See* Doc 192 at 1.[2] But the jury's findings on damages for the FLSA opt-in plaintiffs are insufficient to make calculation of the state law damages a simple matter of math.

At the trial, the plaintiff's damages evidence took more than one form. Dr. Woolfson provided summaries of JMJ's payroll data, and a sampling of opt-in plaintiffs offered representative testimony. While Dr. Woolfson's payroll summaries helped the jury understand the documented instances of underpayment, the representative testimony was essential to proving the undocumented instances, since, by definition, off-the-clock work is not reflected in payroll records.

The jury's verdict reflects their consideration of damages evidence beyond Dr. Woolfson's summaries. Instead of simply adopting the numbers in the summary as their damages findings, the jury sometimes awarded more in damages than the payroll summaries suggested, *contrast* Doc. 170-1 at 6 (totaling $1,437.15 owed to Shamekia Allred-Clapp), *with* Doc. 181 at 2 (awarding $3,385.00 in damages to Shamekia Allred-Clapp), and they sometimes awarded less. *Contrast* Doc. 170-1 at 6 (totaling $593.04 owed to Marquashia Bradley), *with* Doc. 181 at 2 (awarding $558.00 in damages to Marquashia Bradley). So the jury did more than simply apply a fixed multiplier to the

---

[2] The plaintiff does not appear to contend that the Seventh Amendment jury trial right does not attach to a claim for compensatory damages under the NCWHA. If that is her contention, then that argument is underdeveloped and warrants no consideration. *See Steves & Sons, Inc. v. JELD-WEN, Inc.*, 988 F.3d 690, 727 (4th Cir. 2021) ("Perfunctory and undeveloped arguments are waived." (cleaned up)).

3

summary data, and the plaintiff's suggestion otherwise, *see* Doc. 192 at 6, is unfounded. For the Court to now step in and calculate class damages using a fixed multiplier would be to replace the jury's methodology with something different. That is the exact result the Seventh Amendment prohibits.

Instead, the Court will follow the defendants' proposed course, with some modifications.

The first jury already determined that the defendants failed to pay the class members all wages due for mandatory meetings, mandatory trainings, improper reductions from the time log, work never input into the time system, and overtime. Doc. 181 at 3. Thus, the jury found that each class member was injured, and each one is therefore entitled to at least nominal damages. U.S. Const. amend. VII ("[N]o fact tried by a jury, shall be otherwise re-examined."); *see Bogovich v. Embassy Club of Sedgefield, Inc.*, 211 N.C. App. 1, 12, 712 S.E.2d 257, 264 (2011) ("According to well-established law, once a cause of action is established, plaintiff is entitled to recover nominal damages." (cleaned up)).

A second jury will determine the amount of compensatory damages each class member is entitled to receive under N.C. Gen. Stat. § 95-25.22(a), mirroring the approach used to determine the damages obtained by the FLSA opt-in plaintiffs. *See* Doc. 181 at 2–3. As happened at the first trial, this can be done through summary evidence of payroll records and some representative testimony from a few class members to give the jury context and a basis for calculating other damages not reflected directly in the payroll records. Therefore, only one trial on damages for class members will be necessary.

The Court has considered other alternatives. But each presents challenges that counsel in favor of the chosen approach.

Individual jury trials could be set for each of the nearly 100 class members. But if each trial only took a single day, that would require the Court to sideline almost the entirety of its busy docket for months in order for the parties to put on largely duplicative evidence. The defendants have not asked the Court for such an inefficient process.

A set of bellwether trials could be held, providing more information for the parties to use in negotiating settlements of the remaining claims. But it seems unlikely the parties' positions would change after a few more jury verdicts if the first jury's FLSA damages findings did not move the needle. *See generally Ayers v. GKN Driveline N. Am., Inc.*, No. 23-CV-581, 2026 WL 1091268, at *7 (M.D.N.C. Apr. 22, 2026) ("Optimism is not a case management strategy."). Neither party suggests that this would be helpful.

The class could be decertified and notice could be provided to the former class members informing about the possibility of pursuing damages on an individual basis. *See e.g., Tardiff v. Knox Cnty*, 365 F.3d 1, 7 (1st Cir. 2004). But if the FLSA damages awards are any indicator, many of the class members' claims will be for well less than $1,000, *see* Doc. 181 at 2–3 (awarding seven out of fifteen collective members less than $500), so the prospect of individual suits is unrealistic and the defendants would effectively be let off the hook for the wage and hour violations a jury has already found they committed. In their briefing, the defendants did not suggest decertification.

It seems that the plaintiff now has an organized way to present the damages evidence in a coherent and efficient fashion, through classwide summary evidence and a

limited amount of representative evidence.  Thus, resolution on a class basis remains

manageable.  The first trial only took three days, and this trial should not take any more

time than that, since liability is not at issue.  Based on its extensive experience with this

case and hundreds of other jury trials over the years, the Court finds that three days will

be sufficient if the parties are organized.  A time limit will encourage such organization.

There may also be other efficient alternatives for resolving this dispute, such as

binding arbitration, a summary bench trial, or referral to a special master, but the parties

have not agreed to one.  Absent the consent of the parties, those avenues remain closed.

*See AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986); Fed. R.

Civ. P. 39(a); Fed. R. Civ. P. 53(a)(1).  A second jury trial to decide each class member's

damages protects the Seventh Amendment rights of the defendants and, in the absence of

an agreement otherwise, is the best route toward "the just, speedy, and inexpensive

determination" of the class's claims.  Fed. R. Civ. P. 1.

## II.     Trial Preparation and Logistics

The parties have had no success at resolving any part of this case by agreement.

That is their prerogative.  It may still be that there are ways to narrow the remaining

issues, resulting in a more efficient trial.  That would benefit all parties.  To that end, the

Court will impose some additional pretrial obligations.

First, the Court will establish a process for the parties to work through issues about

the accuracy of any summary of payroll records to be offered at trial.  The Court already

determined at the first trial that a summary of payroll records was admissible under Rule

1006, and it would save time and reduce confusion if the parties could agree on an

6

accurate summary or summaries of at least some of the relevant data.[3] From the briefing, it seems likely that the plaintiff already has such a summary either prepared or in process.

Second, the Court will require the plaintiff to promptly provide the defendants with a list of the amount of damages she will seek at trial for each class member, with an explanation of how those damages are calculated and explaining reasons for any individual differences. The defendants are reminded that the jury has already determined that JMJ's payroll records do not accurately reflect all work done by the class members and for which they should have been but were not paid, so it is permissible for the plaintiff to use estimates to fill in the gaps. *See generally Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 456 (2016) (explaining *Mt. Clemens* burden shifting). The parties shall further discuss whether there are facts to which they can stipulate.

Third, the Court will consider allowing the plaintiff to serve Requests for Admission specific to the damages claimed by each class member and requiring the defendants to either admit the amount of damages or, if they do not admit the amount in whole, to answer with the specificity required by Rule 36(a)(4) or face sanctions. If the plaintiff wishes to go this route, she should present the proposed Requests to defense counsel, and counsel shall meet and confer in an effort to decide if this is workable and productive. If plaintiff concludes such discovery is workable and productive, she may

---

[3] The defendants continue to say that any such summary will be inadmissible, and they point to a number of problems with such a summary. Doc. 194 at 2–3. They are exactly the kinds of problems the parties should be able to work through, and in any event those objections are unlikely to be insurmountable for the plaintiff, assuming she is prepared. The summary will be based on the defendant's voluminous payroll data, and there is no obvious reason the parties cannot agree to an accurate summary of at least some of the payroll data.

file a motion for limited reopening of the discovery period for this purpose. Defendants are reminded that Federal Rule of Civil Procedure 36(a)(4) does not allow blanket denials and requires a significant degree of specificity. *See generally Fisher v. Balt. Life Ins. Co.*, 235 F.R.D. 617, 630 (N.D.W. Va. 2006) (Mag. J., Opinion & Order); see also Fed.R.Civ.P 36(a)(6)(noting that answers which do not comply can result in an order that the facts are admitted).

Fourth, the parties had some difficulties with trial preparation the first time around. The plaintiff was not completely organized with her exhibits in the lead-up to trial, and the defendants were not organized with their exhibits during the trial. To reduce the chance that this will occur again, the Court will place specific requirements on the disclosure of exhibits and witness lists.

Finally, the Court will direct the parties to meet and confer about potential trial dates. The Court will also set firm deadlines for complying with the requirements in Rule 26(a)(3) and LR 40.1(c).

It is **ORDERED** that:

1. The plaintiff's motion for damages, Doc. 191, is **GRANTED** to the extent that the Court will set the damages issue for jury trial and the motion is otherwise **DENIED.**

2. Three days is sufficient to try the case from opening statement to closing argument. The Court will set specific time limits for each side later.

3. Counsel **SHALL** immediately confer with their clients, witnesses, and each other, and no later than June 29, 2026, **SHALL jointly** provide the case manager with at

8

least three possible trial dates between October 19, 2026, and January 29, 2027, excluding November 23–27 and December 21–31.

4. The Court will set a trial date and pretrial conference by separate order as time permits. If the parties agree on an alternate method to resolve class damages, they **SHALL** promptly advise the Court.

5. Any party intending to offer at trial a summary of records pursuant to Federal Rule of Evidence 1006 **SHALL**, no later than July 3, 2026, provide the other party with a copy of the summary or summaries. Counsel **SHALL** thereafter meet and confer in an effort to identify any inaccuracies or corrections that need to be made, with the hope that the parties can stipulate to the admission of an accurate summary of some or all of the relevant data.

6. No later than July 10, 2026, the plaintiff **SHALL** provide the defendants with a list detailing the amount of damages she expects to seek at trial for each individual class member, explaining of how those damages were calculated and reasons for any differences between class members.

   a. Counsel **SHALL** thereafter meet and confer to see if claims of some of the class members can be resolved and to narrow and focus areas of disagreement. Counsel **SHALL** discuss possible stipulations as to any facts relevant to the damages claims and **SHALL** discuss ways to be efficient with the time allotted for trial.

   b. If, after presenting proposed Requests for Admission to defense counsel and meeting and conferring about the same, the plaintiff concludes RFAs on

9

damages would be workable and helpful, she may, no later than July 20, 2026, file a motion for limited reopening of the discovery period for this purpose and shall attach the proposed RFAs to the motion; the defendant shall respond to the motion within five business days, and the plaintiff may reply within three business days.

7. Witness and exhibit lists:

    a. The parties **SHALL** file the witness and exhibit lists required by Federal Rule of Civil Procedure 26(a)(3) and LR 40.1(c) no later than August 28, 2026.  On that same date, the parties **SHALL** exchange exhibit notebooks containing copies of all exhibits, with numbered exhibit stickers already attached and with the exhibit number corresponding to the exhibit list.  The parties **SHALL** file a hard copy of the notebook with the Clerk but **SHALL NOT** file copies of the exhibits on the electronic docket.

    b. Objections and motions in limine **SHALL** be filed no later than September 11, 2026.  Responses to motions in limine **SHALL** be filed no later than September 18, 2026.

    c. Any exhibits in the form of charts or tables **SHALL** be filed in both digital spreadsheet format and a printable format with a font size large enough to be comfortably read without magnification.

8. Any deposition designations or designations of testimony from the first trial **SHALL** be served, but not filed, no later than August 14, 2026.  Objections and counter-designations **SHALL** be served, but not filed, no later than August 21,

2026.  Objections to counter-designations **SHALL** be served, but not filed, no later than August 28, 2026.  The parties **SHALL** immediately thereafter meet and confer in an effort to narrow and focus any disputes.  If deposition or previous trial testimony from fewer than four witnesses will be offered, the designations, counter-designations, and objections, as narrowed after meeting and conferring, **SHALL** be filed by joint submission no later than September 11, 2026.  If deposition or previous trial testimony from four or more witnesses will be offered, the parties **SHALL** advise the case manager by joint email sent no later than September 11, 2026, of the general nature and extent of any remaining disagreements and whether designations are likely to be narrowed as trial approaches.

9. Trial briefs required by LR 40.1(a) **SHALL** be filed no later than September 18, 2026.

10. The parties **SHALL** exchange a proposed verdict sheet and proposed jury instructions no later than August 14, 2026, and **SHALL** thereafter meet and confer in an effort to narrow and focus any disputes.  No later than August 28, 2026, the parties **SHALL** file a joint submission containing agreed upon instructions and any additional requests for instructions as to which there is disagreement, clearly identifying the specific disagreements and the same for a proposed verdict sheet.

11. If any party believes that a judicial settlement conference with the Magistrate Judge would be helpful, they may ask for it.  Otherwise, the Court does not plan to hold a judicial settlement conference.  The Court encourages the parties to explore

settlement, and the parties are welcome to participate in a further mediation, if they choose.

12. Except as explicitly modified herein or otherwise, the provisions of the otherwise applicable Local Rules and Rules of Civil Procedure apply.

13. The Court expects the parties to comply with these deadlines without moving for extensions or modifications, absent settlement or agreement to an alternative method of resolution.

This the 17th day of June, 2026.

_____
UNITED STATES DISTRICT JUDGE

12